L. L. DOLTON, Plaintiff-Appellant,

v.

CAPITOL FEDERAL SAVINGS AND LOAN ASSOCIATION, a Federally Chartered Savings and Loan Association, First Capitol Corporation, a Colorado corporation, and Richard D. Heiserman, Defendants-Appellees and Third Party Plaintiffs,

and

Fuller and Company, a Partnership, Third Party Defendants.

No. 80CA1043.

Colorado Court of Appeals,
Div. II.

Sept. 3, 1981.

Rehearing Denied Oct. 8, 1981.

Certiorari Denied March 8, 1982.

Sanford B. Hertz, P. C., Robert M. Bearman, P. C., Denver, for plaintiff-appellant.

Harry Williams, Law, Scheid & Farabee, P. C., John M. Law, Jeffrey Beattie, Denver, for defendants-appellees and third party plaintiffs.

STERNBERG, Judge.

Plaintiff appeals a summary judgment entered for defendants, asserting that the trial court erred in concluding there was no legal basis for its claims for tortious interference with contractual relations and prospective business advantage and breach of fiduciary duty. We affirm in part and reverse in part.

Plaintiff L. L. Dolton is a real estate developer. Defendants are Capitol Federal Savings & Loan Association, a lender; First Capitol Corporation, a subsidiary of Capitol Federal engaged in the business of real estate development; and Richard D. Heiserman, senior vice-president of Capitol Federal and president of First Capitol.

Dolton and First Capitol sought to buy the same parcel of real estate through independent negotiations with the real estate broker of Parker Farms, the owner. In September of 1976, First Capitol informed Parker Farms' broker of its intent to make a cash offer for the property. In early October, Dolton submitted an offer to purchase for the asking price, but specifying installment payments. Dolton claims he was told by the real estate broker that this offer had been accepted by the owners. Although the offer itself was signed by the broker it was never accepted in writing by the sellers. Dolton asserts, however, that, because the broker was a partner in Parker Farms, his signature constituted acceptance on behalf of the seller.

Dolton then contacted Heiserman in his capacity as an officer of Capitol Federal, an association with whom Dolton had dealt for some 20 years. Dolton claims that he informed Heiserman that he had offered to purchase the land and that it had been accepted. He then inquired about financing the purchase through Capitol Federal, telling Heiserman the purchase price and the terms of purchase. According to Dolton, Heiserman told him that First Capitol had once been interested in the property, but no longer intended to purchase it. Dolton did not submit a loan application.

On October 11, First Capitol offered to purchase the property for an amount less than the listing price, but for cash. This offer was accepted. The record reflects that, had Parker Farms not accepted First Capitol's offer, it would have accepted Dolton's.

Upon discovering that First Capitol had purchased the property, Dolton brought this action, claiming tortious interference with the contract he asserts existed between himself and the seller, tortious interference with a prospective business advantage, and breach of a fiduciary duty on the part of the lender. The trial court granted the defendants' motion for summary judgment and Dolton appeals.

### I. Tortious Interference With Contractual Relationship

An element of the tort of intentional interference with a contractual relationship is the existence of an underlying contract between the plaintiff and the owner of the property. *Comtrol, Inc. v. Mountain States Telephone & Telegraph Co.*, 32 Colo.App. 384, 513 P.2d 1082 (1973). Al-

though intentional interference with a *voidable* contract is actionable, *Carman v. Heber*, Colo.App. 601 P.2d 646 (1979), where a contract is *void* pursuant to statute, rather than voidable, there can be no liability for inducing its breach. *Colorado Accounting Machines, Inc. v. Mergenthaler*, Colo.App., 609 P.2d 1125 (1980).

█ Contrary to Dolton's contention, there is no document which can be construed as a written agreement between him and Parker Farms. Even if we assume an oral contract for the purchase of the property did exist, by the specific language of the statute of frauds, it was "void". Section 38–10–108, C.R.S. 1973. Hence, there was no error in granting summary judgment on defendants' claim of tortious interference with a contractual relationship.

## II. *Tortious Interference with Prospective Business Advantage*

█ Interference with a prospective business advantage has been recognized as being actionable. *W. Prosser, Torts* § 130 (4th ed. 1971). We hold that such a tort exists in Colorado. To prove tortious interference with a prospective contractual relation, it is not necessary to prove an underlying contract. It is sufficient to show intentional and improper interference preventing formation of a contract. *Restatement (Second) of Torts* § 766B. Comment c to § 766B indicates that interference with the prospect of buying land is actionable under this theory.

However, the trial court here concluded that relief could not be granted on this claim because "plaintiff and defendants were competing in the open market [and therefore] defendants were privileged as a matter of law . . . ." Although correct as to First Capitol, this ruling was erroneous as to the other defendants.

*Restatement (Second) of Torts* § 768(1)(a), states the competitor's privilege relied upon by the trial court. We adopt this section as a clear statement of the law. It provides:

"One who intentionally causes a third person not to enter into a prospective

contractual relation with another who is his competitor . . . does not interfere improperly with the others relation if the relation concerns a matter involved in the competition between the actor and the other . . . ."

█ The trial court correctly reasoned that First Capitol, Dolton's competitor in the field of real estate development, was privileged as a matter of law. But it was error to extend the privilege to Capitol Federal, the lender, and Heiserman, acting individually and in his capacity as an officer of Capitol Federal. Accordingly, summary judgment entered in favor of Capitol Federal and Heiserman on this issue cannot stand.

## III. *Fiduciary Duty*

We also agree with Dolton's contention that the issue of a breach of fiduciary duty is one of fact. Finding that, as a matter of law, the relationship between a savings and loan institution and potential borrower did not give rise to a fiduciary obligation, the trial court concluded that there were no grounds for relief on this theory and, therefore, granted summary judgment in favor of the lender. We disagree with this conclusion.

█ In the absence of special circumstances, the legal relationship between a lending institution and its customer is that of debtor and creditor. *Rivera v. Central Bank & Trust Co.*, 155 Colo. 383, 395 P.2d 11 (1964). While there is no *per se* fiduciary relationship between a borrower and lender, a fiduciary duty may arise from a business or confidential relationship which impels or induces one party "to relax the care and vigilance it would and should have ordinarily exercised in dealing with a stranger." *United Fire & Casualty Co. v. Nissan Motor Corp.*, 164 Colo. 42, 433 P.2d 769 (1967). "A confidential relationship arises when one party has justifiably reposed confidence in another." *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979). Upon analysis of the particular circumstances at issue, a fiduciary relationship between a borrower and lender has been found to exist where there is a repose of trust by the customer along with an acceptance or invitation of such trust on

the part of the lending institution. *Pigg v. Robertson*, 549 S.W.2d 597 (Mo.App.1977); *Klein v. First Edina National Bank*, 293 Minn. 418, 196 N.W.2d 619 (1972); and *M. L. Stewart & Co. v. Marcus*, 124 Misc. 86, 207 N.Y.S. 685 (1924).

To determine whether such relationship is present here, it is necessary to determine first whether, as a matter of fact, Dolton trusted Heiserman and Capitol Federal to hold confidential the information which he disclosed regarding his intended purchase of the real estate and the proposed terms of the transaction, and whether the lender accepted or invited his trust. *Pigg v. Robertson, supra.* We note in this regard that "banks present a constant invitation to intending borrowers, and thus subject themselves to whatever implication or obligation is to be drawn from that fact." *M. L. Stewart & Co. v. Marcus, supra.* Also, because a fiduciary relationship may exist between a lending institution and prospective borrower, *Pigg v. Robertson, supra*, Dolton's failure to submit a formal loan application does not compel the conclusion that, as a matter of law, no fiduciary relationship exists here.

■ If a fiduciary relationship exists, the lender has a duty to refrain from involvement in transactions antagonistic to its customer. *Pigg v. Robertson, supra; M. L. Stewart & Co. v. Marcus, supra.* Moreover, a fiduciary has an obligation not to disclose or otherwise misuse confidential information. *See Milohnich v. First National Bank*, 224 So.2d 759 (Fla.App.1969); *Peterson v. Idaho First National Bank*, 83 Ida. 578, 367 P.2d 284 (1961). As stated in *M. L. Stewart v. Marcus, supra* :

"[I]f a person applies for a loan, and in connection with that application discloses his purpose to avail of a bargain which he had not as yet closed by contract, and of which the lender had not previously heard, the courts, whether of law or equity, would afford some form of adequate relief in case the applicant was forestalled in his project by the lender."

Although Dolton had not formally applied for a loan, and First Capitol knew of the availability of the parcel prior to Dolton's conversation with Heiserman, Dolton alleged a long-term business relationship which could reasonably have induced him to relax the care and diligence he might otherwise have used.

■ The conversation between Heiserman and Dolton is critical to determination of the existence and breach of a fiduciary duty. What transpired therein is in dispute. Thus, there are controverted material issues of fact and summary judgment was improper.

With respect to Dolton's claim of tortious interference with contractual relationship, summary judgment is affirmed. On the claim of tortious interference with prospective business advantage, the summary judgment granted in favor of First Capitol is affirmed and is reversed as to the other defendants. The summary judgment granted in favor of defendants Heiserman and Capitol Federal on Dolton's claim of breach of fiduciary duty is reversed. The cause is remanded for trial of the claims remaining.

COYTE and PIERCE, JJ., concur.