Byron G. JARNAGIN, Nada D. Jarnagin, Douglas A. Jarnagin, Linda D. Jarnagin, Dale E. Jarnagin, and Jarnagin Farms, Inc., a Colorado general partnership, Plaintiffs–Appellees and Cross–Appellants,

v.

BUSBY, INC., a Colorado corporation in good standing, and Lyle W. Busby, Defendants–Appellants and Cross–Appellees.

Nos. 91CA2050, 92CA0486 and 92CA0487.

Colorado Court of Appeals, Div. III.

July 15, 1993.

As Modified on Denial of Rehearing Sept. 30, 1993.

Hall & Evans, Alan Epstein, Edward H. Widmann, Robin Lee Beattie, Michael L. Luchetta, Denver, Penny & Penny, Curt Penny, Burlington, for plaintiffs-appellees and cross-appellants.

Rider & Woulf, P.C., Steven R. Rider, David R. Lucey, Christine J. Law, Aurora, for defendants-appellants and cross-appellees.

Opinion by Judge CRISWELL.

Plaintiffs, Byron G. Jarnagin, Nada D. Jarnagin, Douglas A. Jarnagin, Linda D. Jarnagin, Dale E. Jarnagin, and Jarnagin Farms, Inc., brought this action asserting numerous claims against defendants, Busby, Inc., (the corporation) and Lyle Busby (Busby), all arising out of contractual relationships entered into by the parties with reference to two farms initially owned by plaintiffs, but later conveyed to Busby. The court determined that Busby, but not the corporation, had breached an oral agreement amending a written lease with plaintiffs, and it entered an equitable decree in favor of plaintiffs based upon that determination. Busby appeals from that decree. The trial court also determined that plaintiffs owed the corporation a substantial sum, and it entered judgment for it for that amount. Both plaintiffs and the corporation appeal from that judgment. We affirm the judgment in favor of the corporation, reverse the judgment against Busby, and remand the cause to the trial court for further findings and conclusions with respect to the claim upon which the latter judgment was based.

Viewed in the light most favorable to the judgments, the record reveals the following pertinent facts:

From the mid–1940's, plaintiffs have farmed land in Kit Carson County. For many years, they kept an open account with the corporation, which engaged in the fertilizer and fuel business during that time, paying portions of their debt whenever they were able. They had become "business friends" with Busby during this time. In 1988, plaintiffs agreed to consolidate all of their obligations owed to the corporation into one note and loan agreement, which is one of the subjects of this litigation.

Plaintiffs mortgaged their two farms to a third party during the 1970's, but in 1984, because of financial difficulties, they defaulted on their mortgage payments and deeded the farms to the mortgagee in lieu of foreclosure. At that time, they entered into a lease-back of the farms. The lease provided for three successive one-year periods during which plaintiffs could renew the lease, and it gave them a right of first refusal with respect to any sale of either of the farms.

This lease required plaintiffs to obtain an annual operating loan to provide the funds required to operate the farms, which they obtained from another lender. When plaintiffs became unable to meet their obligations under the note for this loan, they prevailed upon Busby to purchase the note and to provide the necessary operating funds.

During 1989, the former mortgagee and now lessor of the two farms found a buyer for each of them and notified plaintiffs of their right to exercise their rights of first refusal. Plaintiffs again prevailed upon Busby to aid them. This time he agreed to purchase the farms and to lease them to plaintiffs under terms similar to those in the previous lease.

However, during 1989, the relationship between Busby and plaintiffs began to deteriorate resulting, in part, from plaintiffs' use for other purposes of certain crop insurance proceeds that they had agreed to pay to Busby to reduce their debt to him. At that time, Busby notified plaintiffs that the lease between them would expire on December 31, 1989, in accordance with its terms, unless plaintiffs exercised their right to renew it before that date. As a condition to renewal of the lease, however, Busby insisted that plaintiffs obtain an operating loan from another source because he refused to provide any further credit to them.

In November 1989, after a full day of negotiations between plaintiffs' attorney and Busby's attorney, plaintiffs' attorney drafted a document that purported to reflect the parties' agreement reached during those negotiations. That document, however, was never signed by any of the parties. Although Busby denied that he had agreed to the terms set forth on this document or that his counsel had authority to bind him, the trial court found that his counsel did have such authority and that this memorandum did, in fact, reflect an oral agreement by the parties to extend the terms of the existing lease for a period of one year, until December 31, 1990.

This memorandum concededly did not specify the amount of any operating loan that plaintiffs would be required to procure, and while negotiations continued for nearly two months over this issue, no agreement upon this subject was ever reached.

In January 1990, Busby, insisting that the lease had expired, issued to plaintiffs a notice to vacate the farms, and plaintiffs responded by commencing this litigation.

### I.

■ Busby first argues that the trial court erred in finding that the parties had reached an oral agreement. We disagree.

■ The existence of an oral contract is an issue of fact for the trial court, and absent clear error, the determination that a contract exists will not be overturned on appeal. *L.U. Cattle Co. v. Wilson*, 714 P.2d 1344 (Colo. App.1986).

■ The credibility of witnesses, sufficiency, probative effect, and the weight of the evidence, as well as any inferences or conclusions to be drawn therefrom, are all within the province of the trial court, and the court's findings upon these matters will not be disturbed on review, unless they are so clearly erroneous as to find no support in the record. *Adler v. Adler*, 167 Colo. 145, 445 P.2d 906 (Colo.1988).

■ An oral contract to lease property is created if there is agreement between the parties as to the extent and bounds of the property to be leased, the amount of rent to be paid, and the term of the lease. *L.U. Cattle Co. v. Wilson, supra.* Here, there is no contention that any of these essential terms was missing from the written memorandum which summarized the oral contract. Rather, the main unresolved issue was the amount of the operating loan that plaintiffs would be required to procure.

■ Plaintiffs testified that this issue was a subject for later mutual agreement. And, a contract that contains essential terms may constitute a valid binding contract, even though the parties agree to negotiate on additional terms. *Marcor Housing Systems, Inc. v. First American Title Co.*, 41 Colo. App. 90, 584 P.2d 86 (1978).

We conclude, therefore, that the trial court's findings that an oral contract was agreed upon by the parties is supported by the evidence.

### II.

■ Busby also asserts that the trial court erred in finding that, because of his alleged breach of a fiduciary duty arising from a confidential relationship between him and plaintiffs, the oral agreement found to exist could be enforced without regard to the statute of frauds set out in § 38–10–108, C.R.S. (1982 Repl.Vol. 16A). We agree with this assertion.

Section 38–10–108 provides that any lease of land for a period of more than one year is void, unless it is in writing and signed by the person to be charged. Plaintiffs concede that this statute would normally apply to the oral agreement at issue, but they contend, *inter alia*, that the trial court properly ruled that the existence of a confidential relationship between them and Busby placed the agreement outside the scope of the statute.

■ A confidential relationship exists between parties to a transaction if it is demonstrated that one party is impelled or induced to place his or her confidence in the other to such an extent that he or she relaxes the care and vigilance that should and would ordinarily have been exercised in dealing with a stranger. *United Fire & Casualty*

*Co. v. Nissan Motor Corp.,* 164 Colo. 42, 433 P.2d 769 (1967); *Dolton v. Capitol Federal Savings & Loan Ass'n,* 642 P.2d 21 (Colo. App.1981).

■ Hence, if, because of the confidence engendered by one party, the other party fails to assure that an oral agreement respecting the title to real estate is reduced to writing, as required by the statute of frauds, the party making the oral promise cannot rely upon such statute in a suit seeking to enforce the oral promise. Rather, the promisor will be treated, in such case, as a constructive trustee for the other party. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

■ However, in order to establish a breach of a fiduciary duty arising from a confidential relationship, there must be proof, among other things, that (1) either the reposing of trust and confidence in the other party was justified, or the party in whom such confidence was reposed either invited, ostensibly accepted, or acquiesced in such trust; (2) the alleged trustee assumed a primary duty to represent the other party's interest in the subject of the transaction; (3) the nature and scope of the duty that arose by reason of the confidential relationship extended to the subject matter of the suit; and (4) that duty was violated, resulting in damage to the party reposing such confidence. *See First National Bank v. Theos,* 794 P.2d 1055 (Colo.App.1990). *See also Destefano v. Grabian,* 763 P.2d 275 (Colo.1988) (priest engaged in marital counseling assumes fiduciary obligations).

Here, therefore, in order to escape the bar of the pertinent statute of frauds, it was necessary for plaintiffs to prove, among other things, that they reasonably reposed confidence and trust in Busby at the time of the negotiations leading to the oral agreement at issue and that, but for such confidential relationship, such oral agreement would have been reduced to writing. *See Page v. Clark, supra.* Our review of this record, however, leads us to conclude that there is simply no evidence that would support any such finding.

Here, there was evidence that, for some years prior to the transaction in question,

Busby and plaintiffs enjoyed a close, business relationship. We assume, therefore, that such relationship could be found to be a confidential relationship within the meaning of the prior Colorado jurisprudence.

However, both parties testified, and it was undisputed, that, prior to the date that negotiations over an amendment to the lease started, such confidential relationship had ended, and disputes between the parties had erupted. The evidence established, for example, that Busby had earlier refused to extend any further operating funds to plaintiffs.

As a consequence of these disputes, the plaintiff who had always dealt with Busby testified that, at a point nearly two months before these negotiations began, "the feeling between [Busby and plaintiffs] had changed drastically, so I would not have relied upon Lyle Busby at that time."

This lack of confidence in Busby is exemplified by the fact that plaintiffs did not rely upon his acting in their best interests in these negotiations. On the contrary, to protect their interests, they engaged the services of independent legal counsel, as did Busby. *See First National Bank v. Theos, supra.*

Finally, there is no evidence that the parties' failure to reduce their oral agreement to writing was because of plaintiffs' reliance upon Busby's intent to act in their interest. *See Page v. Clark, supra.* Rather, both parties, acting through their own legal counsel, expressed the unequivocal intent to reduce any understandings reached to writing. This was not accomplished, however, because Busby insisted that no agreement of the type set forth in the document prepared had been reached.

In imposing a constructive trust upon Busby here, the court placed its principal reliance upon the opinion in *Ralston Oil & Gas Co. v. July Corp.,* 719 P.2d 334 (Colo.App. 1985). There, however, the plaintiff continued to repose confidence and trust in the other party throughout their negotiations and, relying upon the defendant's assurance that the written contract tendered by him contained all of the understandings reached

by them, signed the document tendered without reading it and without obtaining independent legal advice. It was later discovered that the written document did not contain provisions beneficial to the plaintiff that the parties had agreed upon, but which the defendant refused to honor. Under such circumstances, a constructive trust was imposed upon the defendant.

Here, in contrast, the confidential relationship did not exist at the time of the oral agreement, and in any event, the failure to reduce the oral agreement to writing did not result from any such relationship.

Hence, we conclude that the court's determination that the statute of frauds was inapplicable because of the violation of a fiduciary duty arising from a confidential relationship is not supported by the evidence.

However, because the trial court adopted plaintiffs' assertions with respect to the alleged violation of a fiduciary duty, it did not pass upon their alternative submission that the oral agreement was taken outside the statute of frauds by the parties' partial performance of that agreement. Hence, the matter must be remanded to that court for it to consider this issue based upon the present record, to adopt findings of fact and conclusions of law, and to enter an appropriate judgment based upon those findings and conclusions.

### III.

Busby also contends that the trial court erred in its determination of damages. Since this issue will not be moot if the trial court determines that the parties' oral agreement is enforceable, we address it here. And, we agree with Busby, in part.

### A.

Busby first asserts that there was insufficient evidence to support the court's award of damages for lost profits, for a federal crop insurance premium which cost $10,863, and for the court's diminution of the capital improvements which Busby claimed.

■ If the trial court makes a factual determination based on disputed testimony,

that determination will not be disturbed absent clear error. *Vigil v. Pine*, 176 Colo. 384, 490 P.2d 934 (1971). And, our review of the record here convinces us that, except to the limited extent indicated below, the disputed evidence on these issues place them within the authority of the trial court to resolve. Hence, we affirm its determination of these matters.

We also reject Busby's argument that the trial court erred by including in its calculation of damages the $170,000 received in 1990 for a bean crop that the court found, with evidentiary support, was grown in 1989. The court computed plaintiffs' annual average profits by averaging plaintiffs' net income between 1985 and 1989. Since all of the 1989 expenses, including those required for producing the bean crop, had already been deducted from plaintiffs' other 1989 income, all of the funds received from the sale of the beans in 1990 was net income; there were no further expenses, attributable to the receipt of those funds, to be deducted.

Finally, the trial court's determination that only the $30,942 spent by Busby on the sprinkler system may be included in the capital costs calculation finds support in the language of the unsigned written memorandum.

### B.

■ We do, however, conclude that it was error for the court to award to plaintiffs lost profits for two years, rather than for a single year. Plaintiffs argue that the annual lost profits' figure was correctly doubled because, if Busby had not breached the oral agreement, plaintiffs would have been able to exercise their option to purchase the farms. They presumably conclude that they were, therefore, entitled to all of the income lost between the date of the contract's breach and the date of the trial, nearly two years later. We disagree.

Plaintiffs presented no evidence that they would have been financially able to exercise their purchase options. Further, had they exercised such options, their operating expenses, either in the form of monies paid to service any mortgage or in the form of depreciation, would have undergone a substan-

tial increase with a concomitant decrease in their annual profits. Or, there would necessarily have been a *change* in those annual profits, and the trial court's basis for its award of profits for the second year would be faulty, in any event. Therefore, if, on remand, the trial court again enters a judgment for plaintiffs, the court shall adjust its award of damages in light of these comments.

## IV.

### A.

■ In their appeal, plaintiffs first assert that the second motion to set aside the entry of default filed by Busby and the corporation should have been denied by the trial court because it was filed more than six months after the entry of default. We disagree.

While an entry of default against defendants was noted by the trial court clerk, no *judgment* of default was ever entered; therefore, C.R.C.P. 55(c), rather than C.R.C.P. 60(b), applies here. Thus, the six month limitation in C.R.C.P. 60(b) was inapplicable to defendants' motion.

*Buckmiller v. Safeway*, 727 P.2d 1112 (Colo.1986) held that, under both C.R.C.P. 55(c) and C.R.C.P. 60(b), the same factors must be considered to determine whether a defaulting party has shown "good cause" for relief. However, this does not mean that the C.R.C.P. 60(b) time limits apply to motions under C.R.C.P. 55(c). On the contrary, the language of C.R.C.P. 55(c) makes clear that, so long as no judgment has entered, the trial court is free to set aside an entry of default for good cause shown without reference to the C.R.C.P. 60(b) time limits. *See also* C.R.C.P. 54(b).

### B.

Plaintiffs also contend that the trial court erred in determining that the corporation was not Busby's alter ego on summary judgment because there were disputed facts with respect to this issue requiring resolution at a trial. We perceive no error.

■ The corporate veil may not be pierced simply on a showing that a single individual owns and controls a corporation and does a related business in his or her personal capacity, even if doing business with one is conditioned on doing business with the other. Rather, the corporate veil may be pierced only if it is shown that the corporate fiction has been used to perpetuate a fraud or to defeat a rightful claim. *Industrial Commission v. Lavach*, 165 Colo. 433, 439 P.2d 359 (1968).

Further, in order to survive a motion for summary judgment, a plaintiff must present a *prima facie* case that satisfies each of these elements. *Kaiser Foundation Health Plan of Colorado v. Share*, 741 P.2d 714 (Colo. 1987).

Here, the evidence to which plaintiffs refer would not satisfy the required elements, even if proven. Thus, the trial court properly dismissed their claims on summary judgment.

### C.

Plaintiffs also contend that the trial court erred in its equitable decree by allowing Busby to receive compensation for the cost of an agricultural sprinkler system because it was the corporation and not Busby which paid for that system. We disagree.

The record reveals that, while the cost of the sprinkler system was invoiced to the corporation, it was paid from Busby's personal checking account.

### D.

We have considered plaintiffs' other contentions of error, but conclude that they lack merit.

## V.

### A.

■ In its appeal, the corporation first contends that the court erred in deducting from the sum owed by plaintiffs to it an amount that the court determined plaintiffs had previously overpaid in interest. We disagree.

It is not illegal to pay interest on accrued interest. *See* §§ 5–12–103(3) and 5–12–103(4), C.R.S. (1992 Repl.Vol. 2). It is, nevertheless, a matter that must be the subject of agreement by the parties.

Here, the note payable to the corporation did not expressly permit the charging of interest on accrued interest, and the specific terms of the note call for the payment of interest on principal alone. Thus, the question presented was whether the inclusion of interest as principal, when the note was rolled over, was a matter of mutual consent or of mistake. The trial court's finding that it was mistaken and not warranted by the agreement is supported by the record.

### B.

■ Finally, the corporation also claims that the trial court erred in awarding it only a small portion of the attorney fees that were incurred in defending this suit. This was not error.

■ The corporation purchased the promissory note executed by plaintiffs on August 1, 1988, from plaintiffs' creditor bank. That note required the borrower to pay all costs of collection and attorney fees incurred by the lender "in enforcing this Note on default." It is true that any counterclaim asserted as a defense or setoff against the holder of the note to reduce or defeat recovery under that note is normally recoverable under a note provision calling for attorney fees and collection costs. *See Husband v. Colorado Mountain Cellars, Inc.,* 867 P.2d 57 (Colo.App.1993).

Here, however, the claim asserted against the corporation, the holder of the note, as distinguished from the claims asserted against Busby in his personal capacity, was nominal. In fact, the only issue relating to the corporation that was determined at trial was the issue of excessive interest dealt with above. Plaintiffs did not deny owing the note, and all of the claims they asserted which were determined at trial were asserted against Busby personally and not against the corporation. On summary judgment, the trial court had determined that the claims asserted against Busby in his personal capacity could not also be asserted against the corporation, the note holder.

Given these circumstances, the trial court committed no error in refusing to award attorney fees incurred by Busby at trial in defending against the claims asserted against him.

The judgment in favor of the corporation is affirmed. The judgment against Busby is reversed, and the cause is remanded to the trial court for the adoption of further findings and conclusions based on the present record and the entry of an appropriate judgment with respect to the plaintiffs' claim upon which that judgment was based.

NEY and ROTHENBERG, JJ., concur.