WELLS FARGO REALTY ADVISORS FUNDING, INCORPORATED, a Colorado corporation, Plaintiff–Appellant,

v.

UIOLI, INC., a Colorado corporation; Theodore J. Alpert; Leland J. Alpert; and Harvey B. Alpert, Defendants–Appellees.

No. 92CA1286.

Colorado Court of Appeals, Div. I.

Jan. 27, 1994.

Rehearing Denied March 10, 1994.

Dorsey & Whitney, Richard O. Campbell, Debra Piazza, Michael D. Killin, Denver, for plaintiff-appellant.

Holme, Roberts & Owen, Daniel S. Hoffman, Nancy J. Gegenheimer, Walter H. Sargent, Denver, for defendants-appellees.

Opinion by Judge ROTHENBERG.

From a judgment entered in favor of defendants, Theodore J. Alpert, Leland J. Alpert, and Harvey B. Alpert (borrowers) and Uioli, Inc., on their counterclaims, plaintiff, Wells Fargo Realty Advisors Funding, Inc. (lender), appeals. We affirm in part and reverse in part.

On June 5, 1984, borrowers executed a promissory note in favor of and a credit agreement with lender. The promissory note was secured by deeds of trust covering several parcels of property (the property). The credit agreement provided a revolving line of credit up to the lesser of $18,500,000 or 75% of the property's appraised value. "Appraised value" was defined as "the market value of [the property] determined not more frequently than every 12 months by an appraiser selected by [lender]." From 1984 to 1989, lender selected its own in-house appraisers.

Between 1984 and 1989, the parties made three modifications to the credit agreement, and three additional deeds of trust were executed covering additional properties. In addition, the line of credit was increased to $25 million.

In February 1989, lender's in-house appraiser decreased the value of the property by an average of 31% from the appraised values of August 1988, thereby triggering borrowers' default. In response, borrowers commissioned an appraiser who concluded that lender's appraisal greatly undervalued the property. Nevertheless, lender relied upon its own appraisal and required borrowers to pledge a seventh parcel of land as additional collateral.

The parties then executed a fourth modification agreement. Under its terms, the loan value was modified to allow borrowers to borrow up to 65%, rather than 75% of the appraised value. That agreement also authorized a mediated approach to the appraisal process.

Lender and borrowers also commissioned an independent appraiser who appraised the property at $43,635,000. And, under the terms of the modified credit agreement, this appraisal became the appraised value for the twelve months ending October 31, 1990.

On December 1, 1989, borrowers failed to make an interest payment on the promissory note. Accordingly, default interest on the debt started accruing at a rate of over $10,000 per day. At the time of default, the value of borrowers' collateral exceeded the amount of their debt by several million dollars.

In December 1989, borrowers transferred the property that was subject to the deeds of trust under the credit agreement to defendant, Uioli, Inc., borrowers' own corporation. The individual borrowers, however, apparently continued to act in all respects as the owners of the property. Therefore, Uioli, Inc. is hereinafter also included within the term "borrowers."

In an effort to stop the accrual of default interest, borrowers met with lender's representatives on January 26, 1990, and offered several alternatives for satisfying the debt. Borrowers proposed that, rather than lender pursuing foreclosure, they be permitted by lender to market the various parcels on lender's behalf. As an alternative means of satisfying their debt, borrowers offered the lender deeds in lieu of foreclosure on property parcels of lender's own choosing.

Lender rejected borrowers' marketing plan and also rejected the deeds in lieu of foreclosure, unless borrowers agreed to deed 100% of the property to lender and give up any claim of equity in the property.

In February 1990, lender initiated judicial foreclosure actions in three separate counties. The actions were certified to Arapahoe County. During the litigation, two of the properties were foreclosed by senior lienholders. Collin Equities, Inc., a subsidiary of lender, purchased the certificates of purchase from the lienholders. Collin Equities is not a party to this action.

On March 27, 1991, lender recorded all of the previously tendered deeds and immedi-

ately transferred ownership of the parcels to Collin Equities.

In May 1991, borrowers filed counterclaims against lender in the judicial foreclosure action alleging breach of an implied covenant of good faith and fair dealing under the contract, breach of fiduciary duty, and constructive trust. Essentially, borrowers claimed that lender intentionally stalled the foreclosure proceedings to allow default interest to accrue to the extent necessary for lender to acquire all of the property covered by the deeds of trust. Borrowers later amended their counterclaim to add claims for negligence and punitive damages.

Following a bench trial, in a seventy-four page order, the court made extensive findings of fact and conclusions of law and entered judgment in favor of borrowers on lender's complaint. In doing so, the court found that borrowers' debt was satisfied when lender accepted deeds to the property valued in excess of the principal amount of borrowers' debt. The court then ordered lender to release the lien on the one parcel of property that had not been transferred to lender.

The court also entered judgment in favor of lender on the borrower's counterclaim for constructive trust. However, on borrowers' other three counterclaims for breach of contract, negligence, and breach of fiduciary duty, the court entered judgment in favor of borrowers and against lender.

In doing so, the court found, *inter alia,* that: (1) The matter should have been resolved in January 1990, when borrowers offered deeds in lieu of foreclosure on properties sufficient to satisfy the indebtedness; (2) lender engaged in a scheme of wrongful delay and bad-faith foreclosure; (3) the foreclosure appraisal process was "tinged with dishonesty and fraught with bad faith"; (4) lender elected to proceed by judicial foreclosure for the sole purpose of circumventing the statutory safeguards against delay existing in the public trustee foreclosure statute; and (5) lender elected to proceed by judicial foreclosure in order to increase borrowers' debt with default interest, and thereby take more properties than it was entitled to.

The court entered judgment in favor of defendant borrowers in the amount of $12,-929,486.86, calculated as the difference between the value of the lost property and the amount of defendant borrowers' debt to lender on January 26, 1990. The court also found that lender's conduct was deliberate, willful, wanton, and in reckless disregard of defendant borrowers' rights, and awarded them punitive damages in the amount of $100,000.

Lender's appellate counsel did not represent lender at the trial on this matter.

Basically, lender claims it had no legal duty to accept the deeds in lieu of foreclosure and that it had an absolute right to proceed by judicial foreclosure. Accordingly, it claims the trial court erred in finding lender liable for breach of the covenant of good faith and fair dealing under the contract, negligence, and breach of fiduciary duty.

We find no error as to the judgment for breach of contract but reverse the judgment based on both of the tort claims and the punitive damage award arising from the tort claims.

## I.

## BREACH OF CONTRACT:

## COVENANT OF GOOD FAITH AND FAIR DEALING

■ Every contract contains an implied duty of good faith and fair dealing. Restatement (Second) of Contracts § 205 (1981); *See also* Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith,* 94 Harv.L.Rev. 369 (1980); *see generally* Annot., 55 A.L.R.4th 1026 (1987).

■ Colorado has also recognized a separate cause of action sounding in tort for bad faith breach of *insurance* contract. However, no such tort claim has been recognized in other contract actions, and no such tort claim has been alleged here by these borrowers. *See Farmers Group, Inc. v. Trimble,* 691 P.2d 1138 (Colo.1984); *Wheeler v. Reese,* 835 P.2d 572 (Colo.App.1992); *Colorado Interstate Gas Co. v. Chemco, Inc.,* 833 P.2d 786, 792 (Colo.App.1992), *aff'd* 854 P.2d 1232 (Colo.1993) ("Generally, breach of the cove-

nant of good faith and fair dealing implied at law in every contract does not give rise to an independent tort claim.... An exception to this rule applies in the case of the breach of this covenant by an insurance carrier."). *See also Story v. City of Bozeman*, 242 Mont. 436, 791 P.2d 767 (1990) (historical discussion of the duty of good faith in contract and tort actions); S. Phillips, *Tort or Contract: A History of Ambiguity and Uncertainty*, 21 Colo.Law. 241 (Feb.1992).

Here, borrowers alleged that their contract with lender, *i.e.*, the credit agreement, contained a covenant of good faith and fair dealing and that lender breached the covenant. They did not allege that lender's breach of the covenant of good faith and fair dealing also constituted tortious conduct.

Good faith performance of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. Restatement (Second) of Contracts § 205 comment a (1981). *See also* § 4–1–203 and § 4–1–201(19), C.R.S. (1992 Repl.Vol. 2) (imposing obligation of good faith in performance or enforcement of contracts under Uniform Commercial Code).

■ However, the duty of good faith and fair dealing does not obligate a party to accept a material change in the terms of the contract or to assume obligations that vary or contradict the contract's express provisions. Nor does the duty of good faith and fair dealing inject substantive terms into the parties' contract. Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement. *Badgett v. Security State Bank*, 116 Wash.2d 563, 807 P.2d 356 (1991). *See General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038 (6th Cir.1990) (in interpreting a contract, the obligation of good faith cannot be employed to override express contract terms).

■ Each party to a contract has a justified expectation that the other will act in a reasonable manner in its performance. When one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, the contract is breached. *Simmons Oil Corp. v. Holly Corp.*, 258 Mont. 79, 852 P.2d 523 (1993).

In *Wheeler v. Reese, supra*, 835 P.2d at 578, the court stated:

> Every contract contains an implied duty of good faith and fair dealing. *When that duty is breached in most commercial contracts, the result is merely a breach of contract with standard remedies.* (emphasis added)

Here, there is ample evidence in the record to support the trial court's findings that lender owed borrowers a contractual duty of good faith and fair dealing and that lender's conduct as a whole constituted a breach of that duty. Also, the imposition of such a contractual duty did not vary or contradict the express provisions of the loan agreement.

One of borrowers' witnesses testified that, in February 1989, lender's in-house appraiser decreased the value of the property by over 30 percent, thereby triggering default and requiring borrowers to pledge more collateral. He also testified that borrowers then commissioned their own appraiser, who concluded the value of the property had been understated by lender's appraiser. Nevertheless, lender relied on the appraisal of its in-house appraiser and required borrowers to pledge additional collateral.

Lender's legal administrator conceded that borrowers had equity in the property in January 1990 but that lender did not tell borrowers that it would return the excess property to them. This led borrowers to believe that lender would take and keep all of the collateral despite borrowers' equity in the property.

Borrowers also introduced into evidence a message from a senior credit officer to lender's legal administrator stating:

> [R]emember our legal argument must stand on the major premise that *it doesn't matter whether [borrowers] have paper equity in the property,* they defaulted on a nonrecourse, secured obligation and *we are entitled to have all the collateral* [—] period. (emphasis added)

Testimony at trial also supported the trial court's finding that lender deliberately delayed the foreclosure process in order to increase the debt through the accrual of default interest and to realize its ultimate goal of taking all of the borrower's collateral.

In an inter-office memorandum, lender's legal administrator recognized the danger of lender's course of action. The memorandum analyzed case law concerning the invalidation of foreclosure proceedings based on below-market bids and, in addition, the legal administrator stated in the memo:

The most prudent approach before foreclosure would be to have a value determined by an outside appraisal and then bid in 70% of value. *This would protect us against fraudulent conveyance claims....* If our debt is less than 70% of value, our attorney strongly recommends that we forebear from our remedies until our debt equals 70% of value, thereby *avoiding the additional risks and costs of fraudulent conveyance issues.* (emphasis added)

Defendants' evidence also showed that lender intentionally engaged in bad-faith appraisal practices in order to get more property than it was entitled to. For example, lender's in-house appraiser testified that he appraised the property in 1989 and that lender rehired him to reappraise it in the summer of 1990. According to the evidence, on August 17, 1990, the appraiser gave lender an oral valuation which was $1,983,000 less than his 1989 figures. On September 10, 1990, the appraiser submitted a written report which reflected a decrease in value of an additional $2,270,000.

Defendants also introduced evidence that lender breached the covenant of good faith and fair dealing in its transactions involving the foreclosure sale of two parcels which had been encumbered by liens filed before lender's lien. More specifically, lender's legal administrator testified that public trustee foreclosure proceedings were held on both properties and that one of lender's subsidiaries, Collin Equities, bought the certificates of purchase on the parcels. Lender did not disclose that information to borrowers and the court found that lender's intentional and deliberate concealment of the transaction was done to avoid having to credit borrowers' debt with the values of those properties which would have reduced the amount of debt upon which default interest could accrue.

Finally, lender's legal administrator testified that lender entered into negotiations for the sale of a parcel to a third party purchaser, whose identity as a potentially interested buyer of the property had been given to lender by the borrowers. According to the evidence, lender entered into the agreement to sell that parcel to the third party, even though lender did not yet own it.

Based upon these numerous acts of deception, concealment, and chicanery which, in 261 separate findings, the trial court found had been committed by lender, the trial court concluded that an implied covenant of good faith and fair dealing existed in the credit agreement and that, under these circumstances, lender breached that contractual duty. We perceive no error in the trial court's conclusion. *Cf. Volk v. Wisconsin Mortgage Assurance Co.,* 474 N.W.2d 40, 44 (N.D.1991) ("[T]he evidence in this case raises a reasonable inference that [lender] attempted to use the foreclosure action as a means of coercing [borrower] into paying a deficiency judgment which is not allowed under North Dakota law.")

In reaching this conclusion, we reject lender's contention that the trial court misunderstood the correct use of a real estate appraisal and, therefore, erroneously concluded that lender breached the covenant of good faith and fair dealing. As previously noted, the trial court's conclusion was based upon lender's conduct *as a whole* in its transactions with borrowers. Since the trial court's findings are supported by the record, they will not be disturbed on appeal. *See Pomeranz v. McDonalds Corp.,* 843 P.2d 1378 (Colo. 1993).

## II.

## FIDUCIARY DUTY

■ However, we do agree with lender's assertion that the trial court erred in finding

lender breached a fiduciary duty to borrowers.

■■■ In the absence of special circumstances, the legal relationship between a lending institution and its customer is that of debtor and creditor. *First National Bank v. Theos*, 794 P.2d 1055 (Colo.App.1990). Although there is no *per se* fiduciary duty between a borrower and a lender, nevertheless, a fiduciary duty may arise from a business relationship which "impels or induces one party to relax the care and vigilance it would and should have ordinarily exercised in dealing with a stranger." *Dolton v. Capitol Federal Savings & Loan Ass'n*, 642 P.2d 21, 23–24 (Colo.App.1981).

The *Dolton* court added:

[A] fiduciary relationship between a borrower and a lender has been found to exist where there is a repose of trust by the customer along with an acceptance or invitation of such trust on the part of the lending institution.

*Dolton, supra,* at 24. And, as the Montana Supreme Court noted in *Simmons Oil Corp. v. Holly Corp., supra,* 852 P.2d at 526:

[A] fiduciary relationship [between bank and lender] may result from the development of a special relationship akin to an advisor/advisee. This special relationship *must* exist before a fiduciary duty arises.

. . . .

[N]o fiduciary duty arises between a bank and its borrower where the bank did not offer financial advice, its advice was not always heeded, *or where the borrower was advised by others, such as legal counsel.* (emphasis added)

*But see Murphy v. Financial Development Corp.,* 126 N.H. 536, 495 A.2d 1245, 1249 (1985) (In his role as a seller, mortgagee's duty of good faith and due diligence is essentially that of a fiduciary). In sum, the lender's duty to refrain from involvement in transactions antagonistic to the borrower arises *if a fiduciary relationship exists.*

Here, however, borrowers' claim for breach of fiduciary duty arose out of lender's post-default conduct. And, the trial court did not find that these borrowers at that time (or any time) reasonably reposed a special trust and confidence in the lender or relaxed the care and vigilance that borrowers would normally have exercised. To the contrary, by the time of borrowers' default, the parties clearly were adversarial and both sides were represented by experienced, able counsel. *Cf. Jarnagin v. Busby, Inc.,* 867 P.2d 63, 67 (Colo.App.1993) ("This lack of confidence in Busby is exemplified by the fact that plaintiffs did not rely upon his acting in their best interests in these negotiations. On the contrary, to protect their interests, they engaged the services of independent legal counsel, as did Busby."); *Bailey v. Allstate Insurance Co.,* 844 P.2d 1336 (Colo.App.1992) (relationship between an insurer and its insured is predicated on the parties' contractual responsibilities and does *not* give rise to fiduciary relationship).

Under the circumstances at issue, therefore, we conclude that this lender did not have a fiduciary duty to borrowers.

## III.

## NEGLIGENCE

■■■ We also agree with the lender's contention that the trial court erred in finding lender's conduct constituted negligence. We reach this conclusion because the trial court emphatically found lender's conduct was intentional and not merely negligent.

In W. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser & Keeton on Torts* § 31 at 169 (1984), the authors discuss the important difference between negligent and intentional conduct:

It is helpful to an understanding of the negligence concept to distinguish it from intent. In negligence, the actor does not desire to bring about the consequences which follow, nor does he know that they are substantially certain to occur, or believe that they will. There is merely a risk of such consequences, sufficiently great to lead a reasonable person in his position to anticipate them, and to guard against them. If an automobile driver runs down a person in the street before him, with the desire to hit the person, or with the belief

that he is certain to do so, it is intentional battery; but if he has no such desire or belief, but merely acts unreasonably in failing to guard against a risk which he should appreciate, it is negligence.

The authors acknowledge, however, that there is a grey area referred to as "quasi-intent" and that the words "willful," "wanton," and "reckless" are often applied in this area.

> [These words] apply to conduct which is still, at essence, negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if it were so intended.

*Prosser & Keeton on Torts, supra* § 34 at 212–13.

Here, the trial court found considerably more than negligence. It found that: (1) lender had engaged in a scheme of wrongful delay and bad faith foreclosure; (2) it had intentionally and deliberately manipulated the appraisal process, using delay tactics to increase borrowers' debt by millions of dollars, failing to foreclose in a reasonable manner, and using confidential information to procure the sale of borrowers' properties; and (3) its actions were "tinged with dishonesty and fraught with bad faith."

Thus, the trial court's findings of fact make it clear that these actions by the lender were intentional, premeditated acts which were calculated to produce and did produce harm and, further, that the lender "desired to bring about the consequences." Hence, we conclude that these acts were beyond the pale of negligence, gross or otherwise.

## IV.

██ Finally, lender claims the trial court erred in its award of damages. We agree in part.

██ In a breach of contract action, the objective is to place the injured party in the position he or she would have been in but for the breach. *Four Strong Winds, Inc. v. Lyngholm*, 826 P.2d 414 (Colo.1992). In determining issues of causation of injury and the amount of losses suffered, the trier of fact is vested with broad discretion, and its

assessment and award of compensation will not be disturbed absent a showing of an abuse of that discretion. *Koontz v. Rosener*, 787 P.2d 192 (Colo.App.1989).

In its order, the trial court made extensive findings in calculating the proper amount of the damages. Specifically, the court found, *inter alia*, that: (1) on January 26, 1990, borrowers offered lender unconditional deeds in lieu of foreclosure in an attempt to satisfy the debt; (2) lender rejected the deeds in lieu of foreclosure; and (3) lender thereupon began its course of conduct designed to capture all of borrowers' property. Based on these factual findings, the trial court awarded defendant borrowers the difference between the fair market value of the property as established in the 1989 appraisal and the debt as of January 26, 1990.

Our examination of the record reveals no error in the trial court's award of actual damages. It placed defendant borrowers in the position they would have been in but for lender's breach of the covenant of good faith and fair dealing under the contract. We reject lender's contention that the court erred in failing to follow the guidelines set forth in § 38–38–106, C.R.S. (1993 Cum. Supp.).

██ However, since we have also concluded that the evidence does not support the defendant borrowers' tort counterclaims for negligence or breach of fiduciary duty, the trial court's award of exemplary damages cannot stand. *See Mortgage Finance, Inc. v. Podleski*, 742 P.2d 900 (Colo.1987) (punitive damages may not be awarded for breach of contract). *See also Colorado Interstate Gas Co., Inc. v. Chemco, Inc., supra*, 833 P.2d at 792 (breach of the covenant of good faith and fair dealing does not give rise to an independent tort claim, and thus, punitive damages are prohibited); *William H. White Co., Inc. v. B & A Manufacturing Co.*, 794 P.2d 1099 (Colo.App.1990).

The judgment based upon the defendant borrowers' counterclaims for negligence and breach of fiduciary duty is reversed, and the award of punitive damages is vacated. In all

other respects, the judgment in favor of defendant borrowers is affirmed.

PIERCE * and SMITH *, JJ., concur.