OCCUSAFE, INC., an Illinois
Corporation, Plaintiff–
Appellant,

v.

EG&G ROCKY FLATS, INC., a Colorado
Corporation, Defendant–Appellee.

No. 93–1469.

United States Court of Appeals,
Tenth Circuit.

April 19, 1995.

Thomas J. Burke, Jr., Jones & Keller, P.C., Denver, CO, for plaintiff-appellant.

John E. Bolmer, II, Hall & Evans, P.C., Denver, CO, for defendant-appellee.

Before TACHA, McWILLIAMS, Circuit Judges, and BURRAGE, District Judge*.

TACHA, Circuit Judge.

Plaintiff Occusafe, Inc., an Illinois corporation, brought suit against defendant EG&G Rocky Flats, Inc. (EG&G), a Colorado corporation, in federal district court pursuant to the court's diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff asserted three causes of action: (1) tortious interference with contractual relations; (2) tortious interference with prospective business advantage; and (3) breach of an implied covenant of good faith and fair dealing. The district court granted defendant summary judgment on all three claims, and plaintiff now appeals. We exercise jurisdiction under 28 U.S.C. § 1291, reversing in part and affirming in part.

I

Plaintiff provides industrial hygiene consulting services on a contract basis. In the course of its business, it regularly employs industrial hygienists. Because of the relative scarcity of industrial hygienists, plaintiff requires its hygienists to agree, as part of their employment contracts, not to work for an Occusafe customer for at least six months

---

* The Honorable Michael Burrage, District Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

after leaving Occusafe (the "non-compete agreements").

Defendant EG&G operates the Rocky Flats nuclear weapons production facility in Rocky Flats, Colorado, under a contract with the United States Department of Energy. Since December 1990, when defendant assumed the contractual obligations of its predecessor, Rockwell International, defendant has subcontracted with plaintiff for industrial hygiene services.

During the course of the parties' contractual relationship, seven of plaintiff's industrial hygienists have left their employment with Occusafe to accept jobs with defendant. All seven began working for defendant before the six-month period required by the non-compete agreements had elapsed. Plaintiff contends that defendant was fully aware of the non-compete agreements when it hired the industrial hygienists.

After efforts to resolve their differences through negotiation failed, plaintiff filed a complaint in federal district court in November 1990. Plaintiff alleged that defendant had tortiously interfered with plaintiff's contractual relations with its employees, tortiously interfered with plaintiff's prospective economic advantage, and breached the implied covenant of good faith and fair dealing between the parties. Defendant moved for summary judgment pursuant to Fed.R.Civ.P. 56.

The district court held that, as a matter of Colorado law, the non-compete agreements between plaintiff and its industrial hygienists were void. As a result, plaintiff's claims of tortious interference with contractual relations and breach of a covenant of good faith and fair dealing failed because both depended on the validity of the non-compete agreements. The court also concluded that plaintiff had no claim of tortious interference with prospective economic advantage because plaintiff and defendant were competitors. The district court therefore granted defendant summary judgment. Plaintiff now appeals.

## II

■ We review a district court's grant of summary judgment de novo and apply the same legal standard used by the district court. *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir.1994). Under Rule 56(c), summary judgment is appropriate only if the record, viewed in the light most favorable to the party resisting the motion, reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a "genuine" issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ Moreover, as a federal court sitting in diversity jurisdiction, "our role is to ascertain and apply the proper state law, here that of [Colorado], with the goal of insuring that the result obtained is the one that would have been reached in the state courts." *Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1476 (10th Cir.1993). We review de novo the district court's construction of Colorado law, affording no deference to its conclusions. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991). With this in mind, we turn to the merits of plaintiff's claims.

## III

### A.

■ Plaintiff first alleges that, by hiring away its industrial hygienists, defendant tortiously interfered with plaintiff's contractual relations with its employees. Plaintiff contends that defendant knowingly induced the seven industrial hygienists to breach their employment contracts with plaintiff. This claim turns on the validity of the non-compete agreements, for if a contract is void under Colorado law, "there can be no liability for inducing its breach." *Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 23 (Colo.Ct.App.1981); *Colorado Accounting Machs., Inc. v. Mergenthaler*, 44 Colo.App. 155, 609 P.2d 1125, 1127 (1980); *see also*

*Restatement (Second) of Torts* § 766 cmt. f (1979) [hereinafter *Restatement of Torts*] ("[I]f for any reason [the particular agreement] is entirely void, there is no liability for causing its breach.").

Colo.Rev.Stat. § 8–2–113(2) broadly states that "[a]ny covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void." It also provides, however, that "subsection (2) shall not apply to: ... (d) Executive and management personnel and officers and employees who constitute professional staff to executive and management personnel." *Id.* § 8–2–113(2)(d). Plaintiff contends that the non-compete agreements were valid because industrial hygienists are "employees who constitute professional staff to executive and management personnel" for purposes of section 8–2–113(2)(d). The district court disagreed, holding that, as a matter of law, plaintiff's industrial hygienists were not "professional staff" as meant by the statute.

■ The Colorado Supreme Court has yet to interpret section 8–2–113(2)(d), but two decisions from the Colorado Court of Appeals are particularly relevant.[1] In *Porter Indust., Inc. v. Higgins,* 680 P.2d 1339 (Colo.Ct.App. 1984), the court held that "the determination of whether [an] employee was ... '[an] employee[] who constitute[s] professional staff to executive and management personnel' is a question of fact for resolution by the trial court." *Id.* at 1342 (quoting Colo.Rev.Stat. § 8–2–113(2)(d)). And in *Management Recruiters v. Miller,* 762 P.2d 763 (Colo.Ct.App. 1988), the court reaffirmed the holding of *Higgins,* stating that "[t]he determination of whether an employee is executive or management personnel, or professional staff, is a question of fact for the trial court." *Id.* at 765.

■ Thus, under Colorado law, whether a particular group of employees qualifies under the exception of section 8–2–113(2)(d) is an issue of fact. In this case, the issue is undoubtedly both genuine and material—genuine because a reasonable trier of fact could conclude that plaintiff's industrial hygienists were professional staff to executive and management personnel, and material because plaintiff's claim fails if the issue is resolved in defendant's favor.

■ Summary judgment is appropriate only if "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). Applying Colorado courts' interpretation of Colo. Rev.Stat. § 8–2–113(2)(d), we find that there remains a genuine issue of material fact in this case as to whether plaintiff's industrial hygienists constituted "professional staff to executive and management personnel." The district court's order granting defendant summary judgment on plaintiff's claim for tortious interference with contractual relations was therefore inappropriate.

**B.**

■ Plaintiff next claims that defendant tortiously interfered with Occusafe's prospective economic advantage. Colorado courts have recognized this claim (alternatively referred to as a claim of intentional interference with prospective financial advantage or prospective contractual relations) as a cognizable cause of action. *See, e.g., Dolton,* 642 P.2d at 23.

■ Under Colorado law, "the crucial question in determining liability for tortious interference with prospective financial advantage is whether defendant's interference was intentional and improper." *Cronk v. Intermountain Rural Elec. Ass'n,* 765 P.2d 619, 623 (Colo.Ct.App.1988). This inquiry tracks the language of *Restatement of Torts* § 766B, which states that "[o]ne who intentionally and improperly interferes with another's prospective contractual relation ... is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation."

■ As a general rule, however, a plaintiff cannot sue one of its competitors for

---

1. In a diversity case, federal courts are not "absolutely bound" by the decisions of intermediate state appellate courts, *Romero v. International Harvester Co.,* 979 F.2d 1444, 1449 n. 3 (10th Cir.1992), but those decisions can be "persuasive of how the Colorado Supreme Court might rule," *Perlmutter v. United States Gypsum Co.,* 4 F.3d 864, 869 n. 2 (10th Cir.1993).

intentional interference in prospective economic advantage. *Memorial Gardens, Inc. v. Olympian Sales & Management Consulting,* 690 P.2d 207, 210–11 (Colo.1984); *see also Hutton v. Memorial Hosp.,* 824 P.2d 61, 64–65 (Colo.Ct.App.1991). This "competitor's privilege" is set out in section 768(1) of the *Restatement of Torts,* which has been endorsed by the Colorado Supreme Court. *See Memorial Gardens,* 690 P.2d at 210–11. Section 768(1) specifically provides:

> One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor ... does not interfere improperly with the other's relation if
>
> (a) the relation concerns a matter involved in the competition between the actor and the other and
>
> (b) the actor does not employ wrongful means and
>
> (c) his action does not create or continue an unlawful restraint of trade and
>
> (d) his purpose is at least in part to advance his interest in competing with the other.

*Restatement of Torts* § 768(1).

The district court relied on section 768(1) in granting summary judgment to defendant. Plaintiff contests the court's conclusion on two grounds: (1) that Occusafe and EG&G were not competitors, so clauses (a) and (d) were not satisfied; and (2) that defendant employed "wrongful means," so clause (b) was not satisfied.

Plaintiff and defendant clearly were not competitors as *sellers* of their respective services: Plaintiff provides industrial hygiene consulting services, while defendant operates nuclear weapons facilities. But plaintiff and defendant clearly *were* competitors as *buyers* in the market for industrial hygienists. Indeed, as plaintiff acknowledged in its response to defendant's motion for summary judgment, Occusafe and EG&G were "recruiting industrial hygienists from the same small pool of qualified professionals. Hence, while EG&G and Occusafe were not competing with one another for contracts to manage nuclear weapons production facilities for the Department of Energy, they

were indisputably competitive bidders against one another in the marketplace for industrial hygiene professionals."

The competitor's privilege set out in section 768(1) applies when the parties compete *in any way:* "The rule stated in [section 768] applies whether the actor and the person harmed are competing as sellers or buyers or in any other way, and regardless of the plane on which they compete." *Restatement of Torts* § 768 cmt. c. In this case, the parties competed as buyers in the labor market, and defendant's hiring of plaintiff's industrial hygienists was directly related to and in furtherance of defendant's interest in this competition. Thus, clauses (a) and (d) of section 768(1) were satisfied.

Plaintiff's contention that defendant employed "wrongful means" specifically alleges that defendant "violat[ed] its duty to Occusafe, its subcontractor, not to interfere with or hinder Occusafe's performance of its contractual rights and obligations to supply professional industrial hygiene consulting services to EG&G." But in the context of a claim for tortious interference with prospective economic advantage, "wrongful means" refers to conduct such as "physical violence, fraud, civil suits, and criminal prosecutions." *R–G Denver, Ltd. v. First City Holdings,* 789 F.2d 1469, 1476 (10th Cir.1986); *Electrolux Corp. v. Lawson,* 654 P.2d 340, 342 (Colo.Ct. App.1982); *Restatement of Torts* § 768 cmt. e; *see also McCrea & Co. Auctioneers, Inc. v. Dwyer Auto Body,* 799 P.2d 394, 398 (Colo. Ct.App.1989) (holding that the breach of a fiduciary duty is constructive fraud and therefore constitutes a "wrongful means" of competition). The district court correctly concluded that plaintiff has not alleged such conduct here.

Defendant's hiring of plaintiff's industrial hygienists fits under the competitor's privilege of section 768 as endorsed by the Colorado Supreme Court in *Memorial Gardens,* 690 P.2d at 210–11. As a result, defendant's conduct was not "improper" for purposes of a claim for intentional interference in prospective economic advantage, and plaintiff's claim must fail.

## C.

 Finally, plaintiff claims that defendant breached its covenant of good faith and fair dealing by luring away plaintiff's industrial hygienists when it knew about the non-compete agreements. Under Colorado law, "[e]very contract contains an implied duty of good faith and fair dealing." *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1362 (Colo.Ct.App. 1994); *see also Ervin v. Amoco Oil Co.*, 885 P.2d 246, 250 (Colo.Ct.App.1994) ("The covenant of good faith and fair dealing is implied at law in every contract."). And "good faith performance of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Ruff v. Yuma County Transp. Co.*, 690 P.2d 1296, 1298 (Colo.Ct. App.1984); *see also Restatement (Second) of Contracts* § 205 cmt. a (1981).[2] A court's inquiry therefore focuses on whether the defendant's conduct violated the parties' "agreed common purpose" or was inconsistent with the plaintiff's "justified expectations." *See Ervin*, 885 P.2d at 251; *Wells Fargo Realty*, 872 P.2d at 1363.

 The district court rejected plaintiff's claim under the assumption that the non-compete agreements were void: "In essence, Occusafe argues that EG&G had a duty of good faith to abide by contracts that are prohibited by law." Even assuming *arguendo* that this could be an appropriate reason for rejecting plaintiff's claim, it cannot be so at this juncture of this case, as we have determined that a genuine issue of material fact remains regarding whether the non-compete agreements were void under Colorado law. We therefore cannot affirm the district court's resolution of this issue on the ground given. Moreover, the record is insufficient to determine whether defendant's hiring of plaintiff's industrial hygienists violated the parties' "agreed common purpose" or plaintiff's "justified expectations." We therefore must remand this claim to the district court.

## IV

For the aforementioned reasons, we find that there remains a genuine issue of material fact as to whether plaintiff's non-compete agreements were valid under Colorado law. We therefore **REVERSE** the order of the district court granting defendants summary judgment with respect to plaintiff's claims of tortious interference with contractual relations and breach of the covenant of good faith and fair dealing. We **AFFIRM** the district court's order with respect to plaintiff's claim for tortious interference with prospective economic advantage. The case is **REMANDED** to the district court for proceedings consistent with this opinion.

**2.** A claim for breach of a covenant of good faith and fair dealing requires the existence of a contract between the two parties, as the claim generally "must be tied to a specific contract term that allows for discretion on the part of either party." *Ervin*, 885 P.2d at 250. In this case, plaintiff had a contract with defendant to provide defendant with industrial hygiene services.