70 F.3d 1282
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 SPORTING CLUB ACQUISITIONS, LTD., Plaintiff-Appellant,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant-Appellee.
 No. 94-1567.
 United States Court of Appeals, Tenth Circuit.
 Nov. 24, 1995.
 
 Before MOORE, BARRETT, and WEIS,** Circuit Judges.
 ORDER AND JUDGMENT[1]
 WEISS, Senior Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Sporting Club Acquisitions, Ltd. (SCA) brought this action for specific performance and compensatory relief against the Federal Deposit Insurance Corporation (FDIC) based on allegations of fraud, breach of contract, and breach of fiduciary duty. The district court dismissed without prejudice SCA's specific performance claim for lack of jurisdiction under 12 U.S.C. 1821(j), which prohibits courts from taking "any action ... to restrain or affect the exercise of power or functions of the [FDIC in its capacity] as a conservator or a receiver." Concerned lest this jurisdictional dismissal constrain what arguments could be (re)urged on the merits, SCA moved for clarification on the point, which was summarily denied. Thereafter, SCA dropped its fraud claim and the district court entered summary judgment for FDIC on the breach of contract and fiduciary duty claims. SCA now appeals these adverse rulings. As explained below, we affirm for substantially the reasons stated by the district court.
 
 
 3
 We say, "substantially," in part because our affirmance of summary judgment for FDIC on the merits of SCA's substantive claims moots some of the issues before us. Without a viable claim to provide a basis for the specific performance requested, any opinion we might express on the availability of such relief in light of 1821(j) would be purely advisory. Further, since we consider all of the arguments against summary judgment asserted by SCA on appeal, including any the district court may have deemed barred by virtue of its order denying injunctive relief, our affirmance obviates resolution of SCA's objection regarding the denial of its motion for clarification. We turn, then, to the dispositive question of summary judgment.
 
 
 4
 The basic federal principles governing our review were recently summarized in terms particularly appropriate here:
 
 
 5
 We review a district court's grant of summary judgment de novo and apply the same legal standard used by the district court. Under [Fed.R.Civ.P.] 56(c), summary judgment is appropriate only if the record, viewed in the light most favorable to the party resisting the motion, reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. A fact is material if it might affect the outcome of the suit under the governing law, and a genuine issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
 
 
 6
 Moreover, as a federal court sitting in diversity jurisdiction, our role is to ascertain and apply the proper state law, here that of [Colorado], with the goal of insuring that the result obtained is the one that would have been reached in the state courts. We review de novo the district court's construction of Colorado law, affording no deference to its conclusions.
 
 
 7
 Occusafe, Inc. v. EG & G Rocky Flats, Inc., 54 F.3d 618, 621 (10th Cir.1995) (citations and quotations omitted).
 
 
 8
 The uncontested facts material to SCA's contract claim are set out in the district court's order and, again, in the parties briefs, and will be recited only in summary here. In its capacity as receiver, FDIC acquired title to a sporting club, encumbered by a first right of refusal and purchase option held by Olympia & York (O & Y). FDIC offered the property--expressly subject to O & Y's first right--at a public auction, informing participants that seller financing would be available to qualified successful bidders. After entering the successful bid, SCA executed a purchase and sale agreement with FDIC, conditional upon the nonexercise of O & Y's first right. FDIC then gave the requisite notice to O & Y, which did not wish to purchase the sporting club. However, O & Y assigned the first right to a third party, which notified FDIC that it would exercise the right and buy the property. In accordance with the conditional purchase and sale contract with SCA, FDIC informed SCA that the first right had been exercised and terminated the contract. FDIC sold the property to the third party on equivalent terms, including seller financing.
 
 
 9
 The parties' dispute focuses on the interpretation of contractual documents, which, as we consider the operative terms unambiguous, involves a pure question of law, Pepcol Mfg. Co. v. Denver Union Corp., 687 P.2d 1310, 1313 (Colo.1984). SCA maintains FDIC (1) breached their purchase and sale contract by selling the sporting club to O & Y's post-auction assignee, and (2) violated the terms of the auction by providing seller financing in connection with that nonbid sale. The district court rejected SCA's claims based on its conjunctive consideration of the purchase and sale contract and the first right to which it expressly refers. We agree with the district court's analytical approach, see In re Application for Water Rights of Town of Estes Park v. Northern Colo. Water Conservancy Dist., 677 P.2d 320, 327 (Colo.1984)("When necessary to ascertain the agreement of the parties, separate instruments that pertain to the same transaction should be read together ... even though they are not executed by the same parties."); see also Hein Enters., Ltd. v. San Francisco Real Estate Investors, 720 P.2d 975, 980 (Colo.Ct.App.1985)(where contract was expressly made subject to instrument containing right of first refusal, such right deemed part of contract as a matter of law), and affirm the conclusions reached thereby.
 
 
 10
 Although donning various legal guises, SCA's primary argument essentially consists of one naked assertion: where the purchase and sale contract acknowledges that it may be nullified by "the party entitled to exercise the First Right of Refusal (the 'Right Holder')," see App. at 106, this reference to the right holder, though unqualified, must be understood as tacitly modified by some such phrase as "at the time the operative purchase offer is communicated," thereby precluding O & Y's assignment of the first right after learning of SCA's bid. Recognizing that a property interest of the sort involved here is presumed freely assignable absent an express prohibition, see Scott v. Fox Bros. Enters., 667 P.2d 773, 774 (Colo.Ct.App.1983)(recognizing presumption as to real estate option, relying on Clark v. Shelton, 584 P.2d 875 (Utah 1978), a first right of refusal case); see, e.g., Hein Enters., 720 P.2d at 978-80 (acknowledging proper exercise of first right of refusal by assignee), and noting the lack of any pertinent limitation here, the district court held as a matter of law that FDIC did not breach the purchase and sale contract by permitting O & Y's post-auction assignee to exercise the first right. In our view, the district court correctly insisted on enforcing the purchase and sale agreement according to its plain terms. See People v. Johnson, 618 P.2d 262, 266 (Colo.1980).
 
 
 11
 SCA next argues that if the purchase and sale contract's reference to the first right is so understood, the contract violates 12 U.S.C. 1821(d)(13)(E), which directs FDIC to "conduct its operations in a manner which--(i) maximizes the net present value return from the sale or disposition of such assets [acquired in its receivership capacity]; [and] ... (iii) ensures adequate competition and fair and consistent treatment of offerors." The district court did not address this objection. FDIC's response that SCA lacks standing to enforce such statutory directives by private right of action misses the point (or at least the finer point) of SCA's objection, i.e., that under a long-standing principle of construction, FDIC's interpretation of the contract, being unlawful, should be rejected in favor of the legal alternative proposed by SCA. See, e.g., Great W. Producers Coop. v. Great W. United Corp., 613 P.2d 873, 878 (Colo.1980); Wyatt v. Larimer & Weld Irrigation Co., 33 P. 144, 149 (Colo.1893).
 
 
 12
 That said, the onus was on SCA to establish the asserted illegality of FDIC's interpretation of the contract, see National Cigarette Serv. Co. v. Farr, 594 P.2d 603, 605 (Colo.Ct.App.1979), and it failed to do so. FDIC's intention of honoring the first right was disclosed before the auction, enabling all participants to weigh the comparative advantages of bidding on the sporting club directly or attempting to obtain the property indirectly through assignment of the first right from O & Y. And while, perhaps, permitting post-auction assignment of the first right may have been financially unwary, in that it could conceivably have undermined the auction's profitability by luring financial competition away from the bidding process (though there is no evidence that in fact happened here), SCA has not cited any authority indicating that an arguable error in judgment constitutes an illegal act under 1821(d)(13)(E). Indeed, if it did, every contractual arrangement with FDIC would involve enormous uncertainty--any misjudgment, oversight, or miscalculation revealed in hindsight as potentially detrimental to FDIC could lead to charges of illegality and consequent reformation or rescission of the transaction.
 
 
 13
 The district court fully considered and properly rejected SCA's contention that FDIC violated the terms of the auction by offering seller financing to O & Y's assignee. The contract specifically governing the purchase and sale between SCA and FDIC superseded any prior, general understandings regarding the conduct of the auction.[2] As discussed above, that contract must be construed in conjunction with the first right, which expressly permits the holder "to elect to purchase the Property upon the same terms and conditions as are set forth in the [operative] Offer." App. at 105 (emphasis added). Since SCA's offer contemplated seller financing, the same was properly made available to the first right holder as well.[3]
 
 
 14
 Finally, we affirm the district court's holding that FDIC did not owe any fiduciary duties to SCA. Such duties do not arise as a matter of course between buyer and seller, see Trussell v. United Underwriters, Ltd., 228 F.Supp. 757, 762 (D.Colo.1964); Long v. Towne, 639 P.2d 528, 530 (Nev.1982)(citing cases for general rule), or between borrower and lender, see First Nat'l Bank v. Theos, 794 P.2d 1055, 1060 (Colo.Ct.App.), cert. denied (July 30, 1990). SCA has not established the existence of any special circumstances indicative of a fiduciary relationship. See id. at 1060-61; see also Moses v. Diocese of Colo., 863 P.2d 310, 321-22 (Colo.1993), cert. denied, 114 S.Ct. 2153 (1994).
 
 
 15
 We have reviewed the arguments advanced by SCA on appeal and, whether expressly addressed or rejected without comment, they are all found to be without merit. The judgment of the United States District Court for the District of Colorado is AFFIRMED.
 
 
 
 **
 Honorable Joseph F. Weis, Jr., Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The auction brochure specifically informed participants that the terms of the purchase and sale contract awarded to the successful bidder "will control the sale and purchase of each Property and that the same will supersede this catalog's terms and conditions." App. at 99
 
 
 [3]
 We also note that while the auction brochure offered seller financing to qualified bidders, it did not state that this offer somehow precluded FDIC from providing such financing in accordance with the terms of the first right incorporated in the applicable purchase and sale contract