**L.U. CATTLE COMPANY,**
**Plaintiff-Appellee,**

v.

**Randall M. WILSON and Janet Wilson,**
**Defendants-Appellants.**

**No. 83CA1354.**

Colorado Court of Appeals,
Div. II.

Jan. 30, 1986.

McDaniel & McDaniel, Gerald B. McDaniel, Durango, for plaintiff-appellee.

Moye, Giles & O'Keefe, John E. Moye, Denver, for defendants-appellants.

STERNBERG, Judge.

Defendants, Randall and Janet Wilson (lessors), appeal from a judgment awarding plaintiff, L.U. Cattle Company (lessee), $30,862.69, plus costs, on its claims for restitution in unjust enrichment and for damages consisting of lost profits following breach by defendants of an oral lease. We affirm.

Viewed in the light most favorable to the judgment, the record reveals the following pertinent facts. In August 1980, the Wilsons purchased land then being leased by lessee from one Mason; by the terms of the purchase, this lease (the Mason lease) was assigned to lessors. Because the Mason lease was to expire on November 1 of that year, Randall Wilson contacted John R. Kroeger, as representative of lessee, to negotiate terms for a new lease.

The two met on September 25 and discussed several points pertinent to a lease of the land for farming purposes, including the lessors' desire that alfalfa rather than corn be planted on the acreage. Because alfalfa would be planted in the summer of 1981 and would not produce income sufficient to cover lessee's operating expenses for that year, Kroeger informed Wilson that he would plant barley as a cash crop for 1981. Barley could be planted in the spring of 1981 and harvested just before the alfalfa was planted. However, as Kroeger further informed Wilson, if the acreage was to support alfalfa, it had to be fertilized before planting and, to maximize the efficiency of this plan, it was necessary to plow and fertilize in the fall of 1980. The fertilizer was designed and intended to benefit the alfalfa crop exclusively.

Wilson testified that the discussions amounted at most to negotiations, informational in nature, while Kroeger felt that the parties had reached an oral agreement for a lease that was to be reduced to writing at a later date. On October 4, 1980, Kroeger, acting on his understanding, prepared and mailed to lessors a memorandum expressing the terms of the parties' agreement. The last line of the memorandum read: "We will start plowing the last of this week." Defendants admitted receiving, reading, and discussing the memorandum but did not sign or otherwise respond to it.

Near the end of October and extending into early November, lessee plowed and fertilized the land. Wilson was notified of this action by an employee but, again, took no action. On or about January 25, 1981, because lessee's principals were uncomfortable that they had no written commitment from lessors, Kroeger telephoned Wilson who agreed to sign a lease. The next day Kroeger prepared a document entitled "Lease Agreement," which he signed on behalf of lessee and mailed to lessors. They did not sign or otherwise respond to this document.

Nothing further occurred until early March when Kroeger again contacted Wilson. At that time Wilson told Kroeger that he would not sign the "Lease Agreement." Kroeger then removed certain equipment from the land and sent lessors a bill for the cost of fertilization. Wilson sent a check in the billed amount, but Kroeger did not cash it.

Lessee thereupon filed suit, stating claims for damages flowing from breach of the oral lease, including lost profits from both the 1981 barley crop and future alfalfa crops, and restitution for amounts expended in fertilizing the land. Lessor raised a statute of frauds defense.

In a trial to the court, the trial court found, based on the October 4 memorandum and the evidence received at trial, that an oral lease had been agreed to at the September 25 meeting. It further found that lessee's actions in fertilizing constituted part performance of the agreement sufficient to remove it from the statute of frauds. Because the memorandum contained language allowing lessors to terminate the lease at any time after 1981, the court denied recovery for lost profits on future alfalfa cuttings. However, it awarded net lost profits on the barley crop

with interest and costs. Lessee also was awarded out of pocket expenses for the cost of fertilizing the acreage.

On appeal, lessors argue, *inter alia*, that the evidence was insufficient to establish a lease and that, if an agreement was reached, the trial court incorrectly applied the law in concluding that lessee's actions in fertilizing the land constituted sufficient part performance to remove the agreement from the statute of frauds. Lessors further argue that the trial court erred in its assessment of damages because lessee's lost profits were too speculative to be awarded and because the award of lost profits under the contract, if proper, precludes recovery in *quantum meruit* for the cost of fertilization.

We conclude that the trial court did not err in finding an enforceable lease or in its award of damages.

## I.

Lessors first contend that the October 4 memorandum was insufficient as a matter of law to allow the court to enforce any agreement between the parties because it did not set forth all material terms of the lease. We do not agree.

■ The fundamental question here is whether the parties reached an oral contract of lease. The validity of such a contract depends upon proof of "a definite agreement as to the extent and bounds of the property leased; ... a definite and agreed term; and ... a definite and agreed price of rental, and the time and manner of payment." *Carlson v. Bain*, 116 Colo. 526, 182 P.2d 909 (1947). The existence of a contract is a question of fact to be determined by consideration of all the facts and circumstances. *See I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882 (Colo.1986). Absent clear error, such determinations will not be reversed on appeal. *See Gebhardt v. Gebhardt*, 198 Colo. 28, 595 P.2d 1048 (1979).

■ In ruling on lessors' motion for new trial, the court acknowledged that the entire agreement had not been reduced to writing. However, the memorandum sufficiently indicates the property to be leased, the amount of rental, and the term of the lease. Testimony given by Kroeger, uncontradicted by lessors, was sufficient to establish the inference that the parties had contemplated that payment would be made as it had been made under the Mason lease. Therefore, the trial court did not err in concluding that the parties had reached a valid oral lease.

■ The next question to be resolved concerns the enforceability of the lease. Colorado's statute of frauds provides that contracts for the leasing of lands for periods longer than a year, or notes or memoranda thereof, are void unless in writing and subscribed by the lessor. Section 38–10–108, C.R.S. Such a note or memorandum "must show on its face or by reference to other writings, first, the names of the parties ...; second, the terms and conditions of the contract; third, the interest or property affected; and fourth, the consideration to be paid therefor." *Micheli v. Taylor*, 114 Colo. 258, 159 P.2d 912 (1945). Where there is part performance of such an oral contract, however, it may be enforceable notwithstanding these requirements. *See* § 38–10–109, C.R.S. *Cf. Carlson v. Bain, supra.*

■ Here, because lessors did not sign it, the October 4 memorandum was insufficient to remove the lease from the statute of frauds. The trial court, however, made no finding that it did. Rather, it found that the statute was overcome by virtue of lessee's actions in plowing the land and in purchasing and applying fertilizer.

■ This case was presented, argued, and tried on the assumption that the doctrine of part performance is applicable in actions for damages at law. *Cf. Carlson v. Bain, supra.* Such performance must be at least substantial part performance. *See Siler v. Investment Securities Co.*, 125 Colo. 438, 244 P.2d 877 (1952). It must be required by, and fairly referrable to, no theory other than that of the alleged agreement. *See Knoff v. Grace*, 68 Colo. 527,

190 P. 526 (1920); *Von Trotha v. Bamberger*, 15 Colo. 1, 24 P. 883 (1890). Further, the part performance must be known to the other party in interest at the time of its occurrence. *See Knoff v. Grace, supra.*

■ The evidence in this case established that the parties' agreement obligated lessee to plant alfalfa and that lessors were aware of the necessity for proceeding with field preparation in the fall of 1980. The October 4 memorandum expressly notified lessors of lessee's intent to do so, yet the lessors took no action indicating that they did not want lessee to proceed. Although lessors argue that lessee's actions are referable to the terms of the Mason lease, there was sufficient evidence in the record from which the trial court could conclude that it was not. On the facts and circumstances of this case, the trial court did not err in concluding that lessee's actions constituted part performance sufficient to render the lease enforceable despite the statute of frauds. *See Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979); *Gebhardt v. Gebhardt, supra.*

## II.

Lessors next contend that lessee's evidence was too speculative to establish its lost profits as elements of damages under the lease. We disagree.

■ Generally, lost profits are available as damages for breach of contract if they are reasonably ascertainable based on past experience and not too speculative, remote, or contingent. *See Prospero Associates v. Redactron Corp.*, 682 P.2d 1193 (Colo.App. 1983). "[I]f there is ... undisputed and positive, competent evidence as to the profits which plaintiff would have realized had the landlord delivered possession of the leased premises at the time stipulated in the lease agreement it will support a judgment based thereon." *Carlson v. Bain, supra.*

Here, lessee presented evidence regarding its 1982 production of barley from a tract of land located one-half mile from the disputed acreage. This land had been pre-pared and worked in the same manner as proposed for lessor's land and was subject to the same growing conditions. It is important to note that the sprinkling system installed on both tracts standardized many of the procedures used in farming them, because water, fertilizer, and weed-controlling chemicals were all applied through the system. That both tracts had been planted in corn before rotation to barley, in addition to their proximity, indicates that soil conditions would have been similar. There was no evidence that weather conditions in 1982 were different than those in 1981. Although lessors introduced evidence regarding actual production at a loss of oats and alfalfa from their acreage, there was substantial evidence that these crops had been planted late by relatively inexperienced farmers. There was conflicting evidence as to whether lessee had properly fertilized the land in fall 1980.

■ We conclude that this evidence was reasonably certain and not so speculative, remote, or contingent as to preclude an award for lost profits. *See Carlson v. Bain, supra; Ault Aerial Applicators, Inc. v. Irvine*, 684 P.2d 949 (Colo.App. 1984); *International Technical Instruments, Inc. v. Engineering Measurements Co.*, 678 P.2d 558 (Colo.App.1983).

## III.

Lessors further argue that the trial court erred in granting restitutionary recovery for costs of fertilization in addition to expectation damages under the agreement. Having found a lease, they argue, the court should have considered these costs as expenses to be born by lessee in performing its obligations thereunder; these amounts and others within the contemplation of the parties should be subtracted from lessee's net lost profits and the judgment modified accordingly. Lessee responds by arguing in essence that both awards may be upheld by interpreting the trial court's awards as reflecting a conclusion that the lease is divisible and that the parties' agreement regarding barley could be severed from

that regarding alfalfa. We agree with lessee.

For a contract to be divisible, it must be apparent that the parties have assented separately to successive divisions thereof upon performance of which the other party will be bound. *John v. United Advertising, Inc.,* 165 Colo. 193, 439 P.2d 53 (1968). The issue as to whether a contract is entire or divisible is one of mixed law and fact, *see John v. United Advertising, Inc., supra,* but, to the extent that the intention of the parties is revealed in a written instrument, it is a question of law. *See Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.,* 195 Colo. 253, 577 P.2d 748 (1978); *International Technical Instruments, Inc. v. Engineering Measurements Co., supra.*

Here the trial court did not specifically conclude that the lease was divisible; but, because it awarded contract damages regarding the barley crop and restitution in *quantum meruit* regarding preparation for the alfalfa crop, we must presume that the court concluded, based on the evidence before it, that the lease was divisible. *See City & County of Denver v. Colorado Land & Livestock Co.,* 86 Colo. 191, 279 P. 46 (1929). Because there was evidence in the record to serve as a basis for this conclusion, and because the document in this case does not lead to a contrary result as a matter of law, the conclusion is binding on review. *Page v. Clark, supra.*

Lessors' other contentions are without merit.

The judgment is affirmed.

SMITH and VAN CISE, JJ., concur.