54 F.3d 787
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Robert LOBATO,
Plaintiff-Counterclaim-Defendant-Appellee-Cross-Appellant,
v.
Carwin R. BLEIDT, Defendant-Counter-Claimant-Appellant,
and
Limited Gaming of America, Inc., a Colorado corporation,
Defendant-Counter-Claimant-Cross-Appellee.
 Nos. 94-1264, 94-1275.
 United States Court of Appeals, Tenth Circuit.
 May 11, 1995.
 
 Before KELLY and SETH, Circuit Judges, and KANE,* District Judge.
 ORDER AND JUDGMENT**
 PAUL KELLY, Jr., Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cases are therefore ordered submitted without oral argument.
 
 
 2
 Robert Lobato brought this action against Carwin Bleidt and Limited Gaming of America, Inc. (LGA) asserting contract and fraud claims. Lobato's claims relate to breach of an alleged oral contract under which Bleidt, as primary owner of LGA, agreed to give Lobato shares of LGA stock and other remuneration in return for Lobato's becoming LGA's president. Bleidt and LGA counterclaimed for conversion and breach of fiduciary duty. Lobato's breach of contract claim went to the jury, and the jury found in his favor against Bleidt, awarding him $3,394,900.15 in damages for the value of the securities Bleidt failed to deliver. The jury also awarded LGA $67,500.00 plus interest on its counterclaim against Lobato for conversion. Bleidt appeals and Lobato cross-appeals against LGA. We have jurisdiction under 28 U.S.C. Sec. 1291 and affirm.
 
 
 3
 The parties are familiar with the facts, and we will not restate them. On appeal, Bleidt raises several issues. He contends first that the oral agreement for the transfer or sale of the stock is unenforceable because it is barred by Colorado's statute of frauds, Colo. Rev. Stat. Sec. 4-8-319, which generally requires that contracts for the sale of securities be in writing. He then contends that in any event, the oral agreement was merged into or discharged by the parties' subsequent written employment outline. Lobato argues that his substantial performance of the oral contract took it out of the statute of frauds. He also argues that he and Bleidt never finalized the outline because they never agreed to the meaning of the term "cause." Therefore, there was no subsequent written contract into which the oral contract could be merged or which could replace the oral contract.
 
 
 4
 Under Colorado law, the existence of an oral contract, its terms, and whether it has been modified are factual questions. See L.U. Cattle Co. v. Wilson, 714 P.2d 1344, 1347 (Colo. Ct. App. 1986); Dime Box Petroleum Corp. v. Louisiana Land & Exploration Co., 938 F.2d 1144, 1149 (10th Cir. 1991). Similarly, whether part performance of an oral contract is substantial enough to take the contract out of the statute of frauds is also a factual question. See, e.g., A & R Co. v. Union Air Transp., Inc., 738 P.2d 73, 74-75 (Colo. Ct. App. 1987); Ellis Canning Co. v. Bernstein, 348 F. Supp. 1212, 1229 (D. Colo. 1972). The jury was instructed on determining the existence, terms, modification, and substantial part performance of contracts, and Bleidt does not challenge these instructions. We will not disturb determinations by the jury if the record contains substantial evidence, viewed in the light most favorable to the prevailing party, supporting the jury's decision. Oklahoma Federated Gold & Numismatics, Inc. v. Blodgett, 24 F.3d 136, 142 (10th Cir. 1994). There was conflicting evidence on all of these issues, and we will not disturb the jury's determinations.
 
 
 5
 Bleidt's next challenges all relate to the amount of the jury's damages award. The district court instructed the jury that its damages award should reflect the value of the stock Lobato was entitled to receive, and the jury awarded Lobato $3,394,900.15. This is the same amount as contained on Lobato's exhibit 76, which he presented as evidence of his share of LGA's book value as of April 30, 1992, based on the shares of stock to which he was entitled. Exhibit 76 is based in turn on Lobato's exhibit 74, which Lobato prepared as a "Computation of Fair Market Value of [LGA's] Assets as of April 30, 1992." Appellant's App. Vol. 9 at 48. Bleidt directs his arguments primarily at exhibit 74.
 
 
 6
 Bleidt makes the related arguments that the district court should not have admitted exhibit 74, that the jury's determination of damages was not based on competent evidence, and that the damages awarded are excessive and require remittitur. We review a trial court's admission of evidence for abuse of discretion. Durtsche v. American Colloid Co., 958 F.2d 1007, 1011 (10th Cir. 1992). Bleidt contends, as he did at trial, that exhibit 74 was inadmissible because it purports to represent the "fair market value" of LGA's assets but instead represents only the book value (cost or face amount) of the assets, and because Lobato admitted that he did not know the fair market value of the assets. Bleidt further contends that because there was no evidence of LGA's fair market value, the damages award is not supported by competent evidence. He also argues that exhibit 74 exaggerated LGA's value because it understated liabilities and overstated assets and that the district court erred in denying his request for remittitur.
 
 
 7
 The district court rejected Bleidt's objection to the admission of exhibit 74 on the basis that the objection went to the weight, and not the admissibility, of the evidence. We agree. Book value, such as cost and face amount, is a valid measure of an asset's worth. Other measures may be more appropriate in certain circumstances, and may have been more appropriate in this case, but that does not negate the probative worth of book value. Moreover, Bleidt could have presented his own evidence of LGA's value using these other measures and reflecting his determinations of LGA's assets and liabilities. He chose not to. The district court did not abuse its discretion in admitting exhibit 74, and that exhibit is competent evidence to support the damages award. The court's denial of Bleidt's request for remittitur was not a gross abuse of discretion. See Sheets v. Salt Lake County, 45 F.3d 1383, 1390 (10th Cir. 1995).
 
 
 8
 Bleidt also contends that the district court erred in refusing to instruct the jury that actual damages must be measured as of the time of the breach of contract. The court's damages instruction told the jury that
 
 
 9
 [t]o the extent that actual damages have been proved by the evidence, you shall award as actual damages the amount you find to be the value of the stock of defendant LGA that Lobato was entitled to receive.
 
 
 10
 You may also award damages for the increase in the value of LGA stock provided, as to these damages, you not only find by a preponderance of the evidence that they were a natural and probable consequence of the claimed breach of the contract by the defendant, Carwin Bleidt, but also that, at the time the parties entered into the contract, the defendant reasonably could have anticipated from the facts or circumstances that the defendant knew or should have known that these damages would probably be incurred by the plaintiff if the defendant breached the contract.
 
 
 11
 Appellant's App. Vol. 1 at 303. Bleidt's tendered instruction contained a paragraph identical to the second one above, on consequential damages, but contained a different first paragraph regarding actual damages. His tendered instruction stated that actual damages should be based on the value of the stock "as of the date of the breach." Id. at 317. He contends that the court's instruction provided the jury no guidance as to the date at which it should determine the value of the stock and that the valuation date was a critical issue at trial because LGA's value fluctuated wildly. He further contends that the breach occurred as soon as Lobato came to work and did not receive the stock, which was in September 1991 when LGA had a negative net worth. Bleidt concedes, however, that consequential damages for the subsequent increase in LGA's value would have been appropriate if foreseeable.
 
 
 12
 "In reviewing jury instructions, we consider all the jury heard, and from the standpoint of the jury, decide not whether the charge was faultless in every particular, but whether the jury was misled in any way and whether it had understanding of the issues and its duties to determine these issues." RTC v. Stone, 998 F.2d 1534, 1549 (10th Cir. 1993) (quotation omitted). We will reverse "only if we have substantial doubt whether the instructions, taken together, properly guided the jury in its deliberations." Mitchell v. Mobil Oil Corp., 896 F.2d 463, 468 (10th Cir.), cert. denied, 498 U.S. 898 (1990).
 
 
 13
 While it may have been better to specifically instruct the jury to determine actual damages as of the date of breach, we conclude that the district court's decision not to do that here is not reversible error. The court's instruction did not prevent Bleidt from arguing to the jury that actual damages should be determined as of September 1991 and that consequential damages were not justified. Bleidt, however, made neither of these arguments, but instead argued only that Lobato's evidence overstated the value of the stock as of April 1992. In other words, Bleidt himself focused the jury's attention on April 1992 as the date at which damages should be determined. Cf. Big Horn Coal Co. v. Commonwealth Edison Co., 852 F.2d 1259, 1272, 1273 (10th Cir. 1988) (noting relevance of appellant's closing argument in considering objections to jury instructions). Thus, if the jury was misled in determining damages, Bleidt contributed to that problem.
 
 
 14
 Moreover, the evidence supported the jury's damages award regardless of whether it determined actual damages as of September 1991 or April 1992. Even if the jury had found no actual damages as of September 1991, the evidence supported the award as consequential damages; that is, the evidence showed that Bleidt knew or should have known--in fact, he hoped and intended--that LGA's value would increase significantly after September 1991 regardless of its value at that time. Further, we disagree with Bleidt's assumption that actual damages must be determined as of September 1991. There was evidence that Lobato was not aware that Bleidt would not honor the oral agreement until sometime after March 1992, making April 1992 a reasonable date for valuing the stock. Cf. Colo. Rev. Stat. Sec. 4-2-713 (damages for seller's breach of contract for sale of goods determined as of "the time when the buyer learned of the breach"). In sum, considering everything the jury heard, we find no error in the instruction.
 
 
 15
 Bleidt's final contention is that the district court abused its discretion in allowing Lobato to add what Bleidt refers to as the "new fraud claims" to the pretrial order that had not been contained in the complaint. Bleidt contends that Lobato added these claims only so he could present evidence of Bleidt's bad character that would otherwise be irrelevant. Lobato contends that the "new fraud claims" were not new claims, but were factual contentions relevant to the fraud claims already contained in his complaint. At the pretrial conference, the court stated that no new claims could be added at that point and that Bleidt should object at trial to any evidence he thought was outside the scope of the complaint. Bleidt failed to do so. Our review is therefore limited to plain error, Glenn v. Cessna Aircraft Co., 32 F.3d 1462, 1466 (10th Cir. 1994), which we do not find.
 
 
 16
 On his cross-appeal, Lobato contends that the jury's verdict in favor of LGA on its conversion claim is not supported by the evidence and is inconsistent with its verdict in his favor on the contract claim. We have reviewed the record and conclude that substantial evidence supports the jury's verdict and that there is no problem with inconsistent verdicts.
 
 
 17
 The judgment of the United States District Court for the District of Colorado is AFFIRMED.
 
 
 
 *
 Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470