# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-01438-SCT

*ROBERT W. WEBB, JR. AND SENORA B. WEBB*

*v.*

*CHRIS BRASWELL, JACKSON AND BRASWELL,*
*P.A. AND FIRST NATIONAL BANK OF ROSEDALE*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/01/2004 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH, III |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | TALBOT O. McCAIN |
| ATTORNEYS FOR APPELLEES: | S. DAVID NORQUIST |
| | GERALD H. JACKS |
| | KATHY R. CLARK |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 05/25/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH
## NO. 2004-IA-01566-SCT

*ROBERT W. WEBB, JR. AND SENORA B. WEBB*

*v.*

*FIRST NATIONAL BANK OF ROSEDALE*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/26/2004 |
| TRIAL JUDGE: | ALBERT B. SMITH, III |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | TALBOT O. McCAIN |
| ATTORNEYS FOR APPELLEE: | P. SCOTT PHILLIPS |
| | L. CARL HAGWOOD |

NATURE OF THE CASE:          CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE

DISPOSITION:          AFFIRMED - 05/25/2006

MOTION FOR REHEARING FILED:

MANDATE ISSUED:

**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    This consolidated appeal arises from orders entered by the Circuit Court for the Second Judicial District of Bolivar County granting summary judgment in favor of two defendants, Chris Braswell and his accounting firm, Jackson and Braswell, P.A. (the Braswell defendants), and granting partial summary judgment in favor of the remaining defendant, First National Bank of Rosedale. First National had filed a combined motion for partial summary judgment and to exclude expert testimony, which the trial court granted in toto. The trial court also denied an earlier motion to amend pleadings filed by the plaintiffs, Robert and Senora Webb. The plaintiffs' motion to amend their pleadings was denied due to untimeliness inasmuch as the trial judge concluded that the granting of the motion would have resulted in undue delay, causing prejudice to the defendants. The trial judge entered final judgment as to the Braswell defendants, resulting in a direct appeal by the Webbs. As to the trial court's grant of a partial summary judgment in favor of First National, the Webbs petitioned this Court for an interlocutory appeal, which we granted. The Braswell defendants also filed a cross appeal from an order of the trial court denying their previously filed motion to dismiss. We have consolidated these appeals.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. Robert and Senora Webb had farmed 1,600 acres of farmland in the Greenwood area for several years prior to the events leading to this litigation. During these years of farming, the Webbs had secured crop production loans by hiring accountant Chris Braswell of the Cleveland Certified Public Accounting firm of Jackson and Braswell, P.A. Braswell was able to secure loans from Valley Bank in Greenwood on behalf of the Webbs. In the early spring of 1997, Braswell informed the Webbs that Valley Bank would not make a loan to them that year to fund their farming operation; however, Braswell felt he could obtain that year's loan from First National Bank of Rosedale. First National required numerous conditions to be met prior to approving the loan, such as a requirement that the Webbs file for bankruptcy. In May of 1997, Braswell informed the Webbs that First National would not provide them the loan. The Webbs filed this lawsuit against both First National Bank of Rosedale and the Braswell defendants on October 10, 1998, claiming various causes of action, including breach of contract and malpractice. The Webbs' position was that the actions of First National Bank and Braswell prevented them from securing a production loan in time to harvest a profitable crop, causing them large financial losses, and practically removing them from the farming industry altogether.

¶3. In 2000, the Braswell defendants filed a motion "to enforce agreement of plaintiffs to dismiss all claims against them with prejudice," based on an alleged agreement between the lawyers to do so. The trial judge denied this motion because he was unable to determine

3

if such an agreement actually existed. This is the basis for the Braswell defendants' cross-appeal.

¶4. After considerable discovery, the trial judge, on October 30, 2002, entered an order setting the trial of this case for December 15, 2003; however, on the day the trial was to commence, the trial court instead entered another order setting various deadlines and assigning a primary trial date of August 23, 2004, with an alternative trial date of December 13, 2004.[1]

¶5. On April 12, 2004, the Webbs filed a motion for leave to amend the complaint, adding new claims against both First National and the Braswell defendants, and seeking damages for future lost profits in unplanted crops. Some of these claims included breach of implied contracts, breach of duty of good faith, fraud, estoppel, intentional infliction of emotional distress, and claims for compensatory and punitive damages. Many of these claims were based on information the Webbs asserted they learned for the first time through discovery, thus they argued it was not possible for those claims to be included in the original complaint, filed before discovery was commenced. In their response, the Braswell defendants argued that the Webbs had not specifically pleaded fraud as required in Mississippi, and, because

---

[1]This order, entered on December 15, 2003, set numerous deadlines as follows: Pre-trial statement to be completed by the parties' counsel by February 16, 2004; counsel to exchange proposed jury instructions and motions in limine by March 1, 2004; objections to jury instructions and motions in limine to be exchanged between counsel by March 15, 2004; mediation to be conducted by March 15, 2004, in an effort to resolve this case prior to trial; conference between counsel by March 30, 2004, in an attempt to resolve objections to jury instructions, motions in limine, exhibits and qualifications of expert witnesses, and to agree on the contested issues of law and any anticipated questions concerning the admissibility of evidence during the trial; by April 15, 2004, counsel to submit a written report to the court on these conferences and any unresolved objections; all other motions to be filed by April 30, 2004; and, by August 16, 2004, counsel to notify the court administrator whether the case would go forward for trial on August 23, 2004, or would be settled or continued. The order also provided for the assessment of sanctions if counsel failed to comply with these various deadlines.

discovery deadlines had passed and trial preparation had been ongoing for years, that an amended complaint would cause the Braswell defendants to suffer substantial hardship.

¶6.     First National filed a combined motion to exclude the new expert testimony and for a partial summary judgment in late April, 2004. The Braswell defendants filed a motion for summary judgment on the same day. On June 21, 2004, the trial court conducted a hearing on these motions and at the conclusion of the hearing, took these motions under advisement for subsequent ruling. Shortly thereafter, the trial court entered an order granting First National's combined motion to exclude expert testimony and for a partial summary judgment. The trial court also entered an order denying the Webbs' motion for leave to amend their pleadings because of untimeliness and the resulting undue delay and prejudice to the defendants. Additionally, the trial judge granted the Braswell defendants' motion for summary judgment. As to the Braswell defendants, the trial judge entered a final judgment pursuant to Miss. R. Civ. P. 54(b).

¶7.     As to the order granting First National's motion for partial summary judgment, and the order denying their motion for leave to amend their complaint, the Webbs requested a certification from the trial court for interlocutory appeal and a stay of the proceedings, pending the outcome of that interlocutory appeal, which the trial court granted on July 26, 2004.[2] The Webbs also appealed the final judgment as to the Braswell defendants on their motion for summary judgment. The Braswell defendants meanwhile filed a cross-appeal

_____

[2]Though of no moment here, we note that M. R. A. P. 5(a) was amended, effective March 1, 2005, eliminating as a prerequisite the trial court's grant or denial of interlocutory certification prior to submitting the interlocutory appeal issue to this Court. This amendment applies to all trial court orders entered on or after March 1, 2005.

5

from the denial of their earlier motion to dismiss filed in 2000. We have consolidated these appeals.

## DISCUSSION

**I.      WHETHER THE TRIAL COURT ERRED IN DENYING THE WEBBS' MOTION FOR LEAVE TO AMEND THE PLEADINGS.**

¶8.      This Court has outlined the standard of review for motions for leave to amend a complaint:

> Motions for leave to amend complaint are left to the sound discretion of [the] trial court; the Supreme Court reviews such determinations under an abuse of discretion standard; and, unless convinced that [the] trial judge abused [his/her] discretion, the Supreme Court is without authority to reverse. *Church v. Massey*, 697 So. 2d 407, 413 (Miss. 1997). Grant or denial of [a] motion for leave to amend is within [the] sound discretion of [the] trial court. *MBF Corp. v. Century Bus. Communications, Inc.*, 663 So. 2d 595, 600 (Miss. 1995); *Frank v. Dore*, 635 So. 2d 1369, 1375 (Miss. 1994). Amendments to the pleadings are properly addressed to the discretion of the lower court. *Red Enters., Inc. v. Peashooter, Inc.*, 455 So. 2d 793, 796 (Miss. 1984); *McDonald v. Holmes*, 595 So. 2d 434, 436 (Miss. 1992). Where the plaintiff filed his motion for amendment of declaration setting out its exact terms, and such terms were incorporated into an order which quoted [the] text of [the] motion and which was filed in [the] cause and entered upon [the] minutes of [the] court, [the] amendment was sufficient, as against [the] defendant's contention that [the] original declaration should have been manually amended by interlineation or otherwise. *International Order v. Barnes*, 204 Miss. 333, 341, 37 So. 2d 487 (1948) (overruled on other grounds by *Mississippi Baptist Hosp. v. Holmes*, 214 Miss. 906, 55 So. 2d 142 (1951)). While the trial court has discretion to allow an amendment and should do so freely under the proper circumstances, an amendment should not occur when to do so would prejudice [the] defendant. *Hester v. Bandy*, 627 So. 2d 833, 839 (Miss. 1993).

*Preferred Risk Mut. Ins. Co. v. Johnson*, 730 So. 2d 574, 579 (Miss. 1998). Thus, in today's case, we may reverse the trial court's denial of the Webbs' motion to amend their

6

pleadings, only upon finding abuse of discretion by the trial court. Otherwise, the trial court's denial of this motion to amend must remain undisturbed.

¶9. The Webbs argue that because Miss. R. Civ. P. 15 (a) requires "leave shall be freely given when justice so requires," the trial court should have granted their motion. Miss. R. Civ. P. 15(a). The Webbs also point out that this Court has found, in part through the comment to the rule, that amended pleadings have been liberally permitted throughout Mississippi's legal history. *See Moeller v. Am. Guar. and Liab. Ins. Co.*, 812 So. 2d 953, 962 (Miss. 2002); *Beverly v. Powers*, 666 So. 2d 806, 809 (Miss. 1995); *Rector v. Miss. State Highway Comm'n*, 632 So. 2d 975, 978 (Miss. 1993). However, as the Webbs concede, the rule is not absolute.

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded . . . if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. - the leave sought should, as the rules require, be "freely given."

*Moeller*, 812 So. 2d at 962 (citing *Estes v. Starnes*, 732 So.2d 251, 252 (Miss. 1999)(quoting *Frank v. Dore*, 635 So.2d 1369, 1375 (Miss. 1994); and *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Therefore, leave should be freely given, but not when factors such as undue delay or undue prejudice would result – factors the Webbs argue are not present here.

7

¶10. First, the Webbs argue that the comment to Rule 15 places the burden of proving prejudice on the party opposing the motion. Next, the Webbs argue that, even if prejudice is shown, the trial court is charged with granting a continuance as opposed to denying the motion. The Webbs rely on the following portion of the comment to Rule 15: "[i]f the opposing party objects but fails to persuade the court that such party will be prejudiced in maintaining the party's claim or defense, the court must then grant leave to amend the pleadings to allow the evidence on the issue. If the objecting party can show prejudice, the court may grant a continuance to meet the evidence, but should again allow amendment of the pleadings." Miss. R. Civ. P. 15 (comment) (relying on 6 Wright & Miller, supra, Civil § 1495). In relying on this comment to Rule 15, the Webbs characterize their motion as one for leave to amend the complaint to conform to the evidence as provided under Rule 15(b). *Mabus v. Mabus*, 890 So.2d 806, 814-16 (Miss. 2003); *Par Industries v. Target Container Co.*, 708 So.2d 44, 51-53 (Miss. 1998). Even assuming, arguendo, that Rule 15(b) applies to this pre-trial setting, the granting of a continuance under Rule 15(b), would most assuredly require the defendants to request the trial court to reopen discovery and practically start from the beginning on trial preparation with regard to the new claims. Rule 15(b) states, inter alia, that "[w]hen issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Miss. R. Civ. P. 15(b). While the above-quoted portion of the rule's comment concerning continuances, and upon which the Webbs rely, is in reference to Rule 15(b), it is incomplete as presented by the Webbs. The previous sentence to the Rule 15(b) comment states that

8

"[u]nder [Miss. R. Civ. P.] 15(b), when evidence is introduced or an issue is raised with the express or implied consent of the other party, the pleadings shall be treated in all respects as if they had been amended to conform to such evidence." The Webbs' motion is simply not a 15(b) motion. The comment contemplates amending pleadings based on evidence already *introduced*. The Webbs are actually trying to amend the complaint to include allegations which require new evidence, namely expert testimony. The rule itself refers to issues that are *tried*, and tried by express or implied consent of the parties. Here, the defendants expressly refused any consent to amend, and no trial has begun. No evidence has been introduced in court. Rule 15(b) exists for the most part for motions based on evidence at trial, and that is how this Court analyzes such motions. *See, e.g., **McCarty v. Kellum***, 667 So. 2d 1277, 1284-85 (Miss. 1995). Thus, the Webbs' motion is not a 15(b) motion and is not governed by that part of the rule. Rather their motion is actually a motion to amend the complaint, which is governed by Rule 15(a).

¶11. The trial judge here found that the Webbs filed their motion to amend four years after initiating suit, and only a few months before trial, and also noted that the Webbs' attorney admitted he was aware of the nature and extent of their claims in 2000, four years before filing this motion. The trial judge further found that the Webbs had more than an adequate amount of time to analyze their case and amend their pleadings much earlier than when they filed the motion and that failure to do so timely was the result of a lack of diligence. Finally, the trial judge found that granting the motion would result in undue delay to the litigation, undue prejudice to the defendants, and "would encourage delay, laches, and negligence."

9

This is precisely what our case law warns against. "[T]he policy to freely grant amendments is not allowed to encourage delay, laches and negligence. Examples of when a motion to amend may be prejudicial include: where it would burden the adverse party with more discovery, preparation, and expense, particularly where the adverse party would have little time to investigate and acquaint itself with the matter." ***Wal-Mart Super Center v. Long***, 852 So. 2d 568, 571 (Miss. 2003) (citations omitted). This Court does not view lack of diligence as a compelling reason to amend. "Applications to amend the pleadings should be prompt and not the result of lack of diligence." ***Harris v. Miss. Valley State Univ.***, 873 So. 2d 970, 991 (Miss. 2004) (relying on ***TXG Intrastate Pipeline Co. v. Grossnickle***, 716 So. 2d 991, 1011 (Miss. 1997)). We have previously rejected the argument of an absolute right to amend, disallowing such amendments based on reasoning that a party should not be allowed to later complain on an issue, when that party "had ample opportunity and time to amend its complaint, and has offered no justification for why it did not do so." ***Hartford Cas. Ins. Co. v. Halliburton Co.***, 826 So. 2d 1206, 1219 (Miss. 2001). We agree with the trial judge, who clearly did not abuse his discretion by denying the Webbs' motion to amend the pleadings. Amending the complaint was easily possible at a much earlier stage in the litigation, and the Webbs give no good reason why this was not done. Amending the complaint at this stage, well after the discovery deadlines, would without doubt cause undue prejudice to the defendants in the form of delay and cost. This issue is without merit.

## II. WHETHER THE TRIAL COURT ERRED IN GRANTING THE BRASWELL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

¶12. Motions for summary judgment are governed by Miss. R. Civ. P. 56. When reviewing a trial court's grant of summary judgment, our standard of review is de novo. *Williams v. Bennett*, 921 So. 2d 1269, 1271 (Miss. 2006); *Monsanto Co. v. Hall*, 912 So. 2d 134, 136 (Miss. 2005). In considering this issue, we must examine all the evidentiary matters before us, including, inter alia, admissions in pleadings, answers to interrogatories, depositions and affidavits. *McCullough v. Cook*, 679 So. 2d 627, 630 (Miss. 1996). The movant carries the burden of demonstrating that no genuine issue of material fact exists, and the non-moving party is given the benefit of the doubt as to the existence of a material fact. *Id.* We are to view the evidence in the light most favorable to the party opposing the motion. *Stallworth v. Sanford*, 921 So. 2d 340, 341-42 (Miss. 2006). If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in that party's favor. *McCullough*, 679 So. 2d at 630. Thus, we will today conduct a de novo review to determine if any genuine issue of material fact existed so that the motion for summary judgment filed by the Braswell defendants should have been denied.

¶13. The Braswell defendants argue the scope of their professional relationship did not exceed the limits of the provisions of an engagement letter and a letter of representation the firm sent the Webbs. The letters essentially stated the nature of the Braswell defendants' work, which consisted of compiling a statement of the Webbs' financial condition and obtaining records from which to compile the statement. The Webbs argued that an oral

11

contract existed, requiring much more from the Braswell defendants, and the Webbs included this allegation in their attempted amendments to the original complaint. However, only count VI (a malpractice claim) and count VII (a misrepresentation claim), in the original complaint, allege any wrongdoing against the Braswell defendants. Count VI alleges that because the Braswell defendants advised the Webbs to pursue funding from First National and no other source, the Braswell defendants committed malpractice which resulted in the Webbs having no funding. Count VII alleges that the Braswell defendants misrepresented to the Webbs that First National would provide their funding, which the Webbs assert was eventually shown to be a false statement, and which resulted in the Webbs pursuing no other funding.

¶14. The trial judge rendered his decision based on the following reasoning. Because the motion to amend the pleadings had been denied, the judge found that the only claims against the Braswell defendants which were properly before the court were those claims in the original complaint. Considering the facts and allegations in the light most favorable to the Webbs – that Braswell did actually give the advice as alleged in Count VI – the trial judge found no indication that such statements could give rise to liability, and therefore, the Braswell defendants were entitled to judgment as a matter of law. As to the allegations in Count VII, there was no credible or relevant evidence found by the trial judge to indicate that the statements were false at the time Braswell supposedly made them, assuming, arguendo, that Braswell indeed made the statements. Falsity of the statement, along with the speaker's knowledge of its falsity, are two of the elements of a cause of action for fraudulent misrepresentation. *Levens v. Campbell*, 733 So. 2d 753, 761-62 (Miss. 1999). The Webbs

12

provide little more in their brief to this Court than the general law on summary judgment motions, such as the standards of review and the burdens of the moving and non-moving parties. The Braswell defendants, however, point out that no evidence existed that advising the Webbs not to attempt to obtain other financing, after First National informed them no production loan was forthcoming, was the proximate cause of any injury, or that the Webbs could have even obtained a loan from other sources. To the contrary, many facts existed which caused the Webbs to be a credit risk, such as facts that the Webbs were heavily in debt, unable for years to profit from their farming, and unable to qualify for a government-secured production loan for 1997. In their reply brief, the Webbs argue that the nature of their business relationship with the Braswell defendants, and the existence of an oral contract between the parties, are fact issues to be determined by a jury. We agree with the trial judge that, after the motion to amend was properly denied, the only counts of wrongdoing against the Braswell defendants before the trial court were the two counts in the original complaint alleging malpractice and misrepresentation. The other purported genuine issues of material fact now argued by the Webbs exist outside these two counts in the original complaint. Viewing the evidence in the light most favorable to the Webbs, no genuine issue of material fact exists as to those two counts. Summary judgment was proper, and this issue is without merit. Because we find that this issue is without merit and that the trial judge properly rendered final judgment in favor of the Braswell defendants, we find unnecessary any discussion on the trial court's denial of the Braswell defendants' 2000 motion "to enforce

13

agreement of plaintiffs to dismiss all claims against them with prejudice," which is the subject of the cross appeal.

### III. WHETHER THE TRIAL COURT ERRED IN GRANTING FIRST NATIONAL'S MOTION TO EXCLUDE EXPERT TESTIMONY.

¶15. When reviewing the trial court's decision to allow or disallow evidence, including expert testimony, we are bound by an abuse of discretion standard of review. *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 34 (Miss. 2003). "Our well-settled standard of review for the admission or suppression of evidence is abuse of discretion." *Id.* We must simply ask with regard to this issue if the trial judge abused his discretion in granting the motion of First National to exclude the expert testimony of agricultural economist David Parvin, Ph.D., whom the Webbs presented to testify to their claims of damages based on future lost profits for unplanted crops.

¶16. Rule 702 of our rules of evidence addresses the admissibility of expert testimony.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Miss. R. Evid. 702. In *Miss. Transportation Comm'n v. McLemore*, 863 So. 2d 31 (Miss. 2003), this Court adopted the standard initially set out by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed 2d 469 (1993), and later modified in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119

S.Ct. 1167, 143 L.Ed.2d 238 (1999). That standard is a two-pronged test. For expert testimony to be admissible, it must be both relevant and reliable. *McLemore*, 863 So. 2d at 38. The party offering the testimony must show that the expert based his/her opinion not on opinions or speculation, but rather on scientific methods and procedures. *Id.* at 36. The trial judge assumes the critical role as a gatekeeper in assessing the value of the testimony. *Id.* at 39. To be relevant and reliable, the testimony must be scientifically valid and capable of being applied to the facts at issue. *Id.* at 36. *See also* *Poole ex rel. Poole v. Avara*, 908 So.2d 716, 721-25 (Miss. 2005).

¶17.    In today's case, the trial court granted First National's motion to exclude the Webbs' expert testimony because it found the testimony did not meet the *Daubert/McLemore* standard of relevance and reliability, inasmuch as the expert was to testify to future damages resulting from unplanted crops. We are hesitant to allow such uncertain damages to be proven. In *Kaiser Invs., Inc. v. Linn Agriprises*, 538 So. 2d 409, 415 (Miss. 1989) (examining damages from crops not planted on farmland after breach of the lease to that land), we held "[t]his Court has stated that damages for breach of contract must be proven with reasonable certainty and not based merely on speculation and conjecture." (Citing *Leard v. Breland*, 524 So. 2d 778 (Miss. 1987); *Lovett v. E.L. Garner, Inc.*, 511 So.2d 1346 (Miss.1987)).

¶18.    In *Kaiser*, we held that evidence of lost profits for unplanted crops was not admissible because the amount of damage was not reasonably ascertainable based on past experience. Because the farming entity in that case had not established itself as profitable, and because

15

there was no definite or certain data by which profits or losses for that unplanted crop might be estimated, we determined that evidence of the projected harvest was erroneously admitted by the trial court and should have been excluded. 538 So. 2d at 415-16 (Miss. 1989) (citations omitted). We considered and discussed other authorities in support of use of profit projections for crops not yet planted, finding the rule to be that such projections should be "reasonably ascertainable based on past experience," as in *L.U. Cattle Co. v. Wilson*, 714 P.2d 1344, 1348 (Colo. Ct. App. 1986), or based upon "reasonable probability," as in *Nelson v. Reisner*, 51 Cal.2d 161, 171-72, 331 P.2d 17, 24 (1958). In *Kaiser*, we cited a Georgia case which held that "anticipated profits of an unestablished future business are generally too speculative for recovery, but where the business has been established, has made profits and there are definite, certain and reasonable data for their ascertainment, and such profits reasonably must have been in the contemplation of the parties at the time of the contract, they may be recovered at least for a limited reasonable future time, even though they cannot be computed with exact mathematical certainty." *Mizell v. Spires*, 146 Ga. App. 330, 332, 246 S.E.2d 385, 387 (1978).

¶19. In today's case, the testimony was proffered for one purpose, to show damages of lost profits as a result of unplanted crops. The Webbs brought this testimony forward without ever establishing that they were profitable. Rather, the Webbs had been farming and operating at a loss in the years prior to the farming year which is the subject of this litigation. Therefore, the amount of damage allegedly resulting from the unplanted crops was not reasonably ascertainable based on the Webbs' past experience, as the rule requires. This

16

being the case, any testimony to prove damage to the Webbs is tenuous at best and fails the reliability prong of the **Daubert/McLemore** test.  For these reasons, we find that the trial judge did not abuse his discretion in granting First National's motion to exclude certain expert testimony proposed to be offered by the Webbs. This issue is thus without merit.

### IV.   WHETHER THE TRIAL COURT ERRED IN GRANTING FIRST NATIONAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT.

¶20.   Again, we review de novo grants of summary judgment by the trial court.  **Williams**, 921 So. 2d at 1271; **Hall**, 912 So. 2d at 136.  This standard of review applies equally to grants of partial summary judgment.  **McKinley v. Lamar Bank**, 919 So. 2d 918, 925 (Miss. 2005).  Based on our discussion of Issue III, supra, the trial judge was correct in denying the Webbs any recovery from claims based on unplanted crops.  To this end, no genuine issue of material fact existed as to those claims, and First National was thus entitled to judgment as a matter of law concerning those claims.  Therefore, this issue is without merit.

### CONCLUSION

¶21.   The tardiness of the motion for leave to amend the pleadings is inexplicable and cannot be excused. Had the motion been granted, the defendants would have been subjected to undue prejudice, and the case itself would have been subjected to undue delay.  As to the only two claims against the Braswell defendants which were properly before the trial court, no genuine issue of material fact existed in favor of the Webbs, even when viewing the evidence in the  light most favorable to them; therefore, the Braswell defendants were entitled to judgment as a matter of law.  Finally, expert testimony offered by the Webbs was

not admissible, and partial summary judgment in favor of First National, as to the issues concerning lost profits from future unplanted crops, was proper. Accordingly, the trial court properly granted judgments in favor of all the defendants.

¶22. For these reasons, we affirm the judgments in favor of Chris Braswell, Jackson and Braswell, P. A., and First National Bank of Rosedale, as entered by the Circuit Court for the Second Judicial District of Bolivar County.

¶23. **AFFIRMED.**

**SMITH, C.J., WALLER, P.J., EASLEY AND DICKINSON, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. RANDOLPH, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. COBB, P.J., AND DIAZ, J., NOT PARTICIPATING.**